**In re John J. GREEN, Jr.**

Supreme Court of Delaware.

Submitted: March 15, 1983.
Decided: July 26, 1983.

Lawrence M. Sullivan (argued); Brian J. Bartley, Wilmington, for applicant.

Howard M. Handelman (argued), Bayard, Brill & Handelman, P.A., A. Gilchrist Sparks, III, Morris, Nichols, Arsht & Tunnell, Victor F. Battaglia, Biggs & Battaglia, Wilmington, for Board.

Before HERRMANN, C.J., and McNEILLY and MOORE, JJ.

PER CURIAM:

John J. Green, Jr., a Maryland lawyer, appeals a decision of the Delaware Board of Bar Examiners (the Board) denying him admission to our Bar because of his failure to disclose to the Board several non-public ethical complaints filed against him by the Attorney Grievance Commission of the State of Maryland (the Maryland Commission). After investigation and a full evidentiary hearing the Board concluded that Green failed to satisfy the requirements of Rule 52(a)(1) of this Court as to his good moral character and reputation.[1] Green raises several issues, basically as follows:

1) The duty of candor imposed by Board rule was not applicable to him.

2) The Board's notice to Green of the hearing on his application did not adequately advise him of the subject matter under investigation.

3) The Board's findings as to Green's lack of candor, and its resultant conclusion that he did not satisfy the admissions requirements of the Delaware Bar, are not supported by the record.

We have carefully examined each of these contentions, and for the reasons hereafter stated, find them without merit. Accordingly, we affirm.

---

1. Rule 52(a)(1) provides in pertinent part:
"... no person shall be admitted to the Bar unless he shall have qualified by producing evidence satisfactory to the Board:

(1) That he is a person of good moral character and reputation and that he possesses such qualities, aptitudes and disposition as fit him for the practice of law;"

## I.

On April 30, 1982, Green filed a sworn application for admission to the Delaware Bar under Supreme Court Rule 53.[2] It was complete in form except for the certificate of a preceptor. When given, this certificate embodies the following representations of the preceptor to the Board under its Rule BR–52.9(b):

(1) That he personally knows the applicant or has conducted a reasonably comprehensive personal interview with the applicant before agreeing to act as his preceptor;

(2) That he has sufficient personal knowledge of the applicant's background, or has made a reasonable investigation into the applicant's background from independent sources, other than the applicant or his family, such that the required certificate can be given freely and without any reservation;

(3) That he has personally reviewed the application and after discussion with the applicant has reasonably assured himself that the application is factually accurate and contains no omission of any fact required to be disclosed therein.

The preceptor also must disclose the basis of his knowledge upon which the certificate is given. Thus, the role of a preceptor is vital to the admissions process, and is an important responsibility of one undertaking it. His diligence is critical to the proper performance of the Board's work, and from the applicant's standpoint, the preceptor is both an advisor and mentor.

Four days before filing his application, Green first met with James D. Griffin, Esquire, a prominent member of the Sussex County Bar, to ask Mr. Griffin to be his preceptor. Acting in a highly responsible and commendable manner, Mr. Griffin stated that because the deadline for filing the application was May 1, it would be impossible for him to give the required certificate by that date in light of the preceptor's duty to investigate the applicant's character and reputation. During this first meeting, Mr. Griffin reviewed Green's sworn application. It contained the following question and answer:

"31. Is there any other incident in your background, not otherwise referred to in the answers to this Questionnaire, which may have a bearing upon your character or fitness for admission to the Bar?

*No.*" (Emphasis added).

Mr. Griffin stated that he would continue to investigate Green's background, but at no point during this meeting did the applicant disclose the existence of any facts which would suggest that he had been the

---

**2.** Rule 53 provides in pertinent part:

"(a) *Requirements for Admission.* Any person who has been admitted to practice in the highest court in any other state or territory of the United States or the District of Columbia and has, as his principal occupation, been actively engaged in the practice of law outside the State of Delaware for a period of 5 years next preceding his application, may be admitted to the Bar upon recommendation of the Board after being subject to such investigation and/or examination as the Board shall determine appropriate. No person shall be admitted to the Bar unless he shall have qualified by producing evidence satisfactory to the Board:

(1) That he has fulfilled the requirements of subparagraph[s] (1) ... of Rule 52 of this Court, which requirements are incorporated herein by reference;

(2) That he is a member in good standing of the Bar of the highest court of a state or territory of the United States or the District of Columbia and that he has, as his principal occupation, been actively engaged in the practice of law outside the State of Delaware for a period of 5 years next preceding his application;

(3) That, if admitted to practice as an attorney in this State, he intends in good faith as a principal occupation, to maintain an office in this State for the practice of law and to practice law actively on a full-time basis in this State; and

(4) That he has been examined by the Board upon legal ethics and The Delaware Lawyer's Code of Professional Responsibility and such other subjects as the Board shall determine, and has been found by the Board to be qualified to practice as an attorney, such examination to be written, or oral, or both, in the discretion of the Board, in accordance with a general scoring method to be provided in the rules of the Board.

subject of ethical complaints in the State of Maryland.

After this conference Mr. Griffin contacted the Maryland Commission, as a routine matter, to request information which might assist him in making the certification as to Green's good moral character and reputation. Counsel to the Maryland Commission advised Mr. Griffin that a waiver from Green was necessary before the Commission could release any information in its files. Thereafter, Mr. Griffin wrote the applicant, requesting "a waiver, addressed to the Commission waiving your right to confidentiality and directing them to release *all information* involving past or pending charges, if any, which might exist in that office." (Emphasis added). In response Green submitted a carefully worded waiver authorizing the Maryland Commission only "to advise Mr. James D. Griffin, Esq., as to whether or not there have been any charges, past or pending, made by this office against me *to the Maryland Court of Appeals* and as to whether at any time my license to practice law in Maryland has been suspended, revoked, or if there have been any *public* sanctions issued against me." (Emphasis added).

Based on this waiver the Maryland Commission informed Mr. Griffin that there were no *public* sanctions issued against the applicant, nor any charges against him, past or pending, in the Maryland Court of Appeals, but that because the waiver supplied was limited to *public* matters the Commission could not inform Mr. Griffin of any other complaints. It required a broader waiver to do so. Mr. Griffin then obtained from the applicant, and delivered to the Maryland Commission, a broad and unequivocal waiver of the type needed to procure full disclosure of Green's record. In response to this second waiver, the Maryland Commission informed Mr. Griffin of a series of five complaints involving alleged unethical conduct by Green. One complaint resulted in a private reprimand; three resulted in a warning issued by the Commission's bar counsel; and one complaint, involving a charge of improper withdrawal as counsel, was still pending.

Following these disclosures, the Board conducted a further investigation and ordered a hearing into the matter of Green's character. In his submissions to the Board Green offered explanations which the Board found to be "disingenuous".

Based on the evidence given by the applicant, the Board found that:

"Mr. Green's lack of candor and forthrightness with respect to the Maryland ethics charges has manifested itself in the following critical respects:

a. Although he believed that the Board required disclosure of the Maryland ethics charges in response to Question 31 of his application, in order to assess his character or fitness for admission to the Bar, Mr. Green intentionally did not disclose that information in response to that question;

b. After having been advised by Mr. Griffin that under the Rules of the Board he could not execute the necessary certificate of good character and reputation as requested by Mr. Green without having made an investigation into his background, Mr. Green intentionally did not tell Mr. Griffin of the existence of the Maryland ethics charges;

c. In response to a written request by Mr. Griffin seeking a waiver of confidentiality of *all* information involving past or pending charges against Mr. Green in the office of the Maryland Commission, Mr. Green submitted an artfully drawn waiver drafted in a way he knew would not permit the disclosure of the Maryland ethics charges; and

d. At the hearing, Mr. Green offered testimony attempting to justify the foregoing instances of lack of candor on grounds that were neither credible nor forthright.

In his testimony at the hearing and in the petition he filed on the day of the hearing (Petitioner's Exhibit 1), Mr. Green has sought to explain his failure to disclose the Maryland ethics charges in

response to Question 31 of his application on three grounds:

a. It was the feeling of the Petitioner [Mr. Green] that the matters before the Maryland Attorney Grievance Commission did not have a bearing upon the Petitioner's character or fitness;

b. Your Petitioner further felt that to respond in the affirmative to Question 31 would imply that the Petitioner's prior actions had been unethical and an indication of bad character; and

c. Your Petitioner also assumed that in the ordinary due course of processing the application, that inquiry to the applicant's home state Attorney Grievance Commission would be made and that any questions raised would be properly and fairly reviewed, thereby making an affirmative answer to Question 31 superfluous.

* * * After hearing the testimony the Board finds these explanations to be disingenuous."

## II.

■ We begin with certain basic principles. This Court, alone, has the responsibility for licensing and disciplining persons admitted to practice in Delaware. This tenet is of historic proportions, having been transplanted to Delaware by the colonists. It is based on the concept, taken from England, that the courts possess the exclusive right to govern the practice of law. *Delaware Optometric Corporation v. Sherwood,* Del.Supr., 128 A.2d 812, 816 (1957); *Delaware State Bar Association v. Alexander,* Del.Supr., 386 A.2d 652, 654 (1978).

■ Moreover, the interest of this State in matters pertaining to the admission and regulation of lawyers practicing before our courts is essential to the primary governmental function of administering justice, and in meeting our obligation to protect the public by assuring and maintaining high standards of conduct of persons admitted to this Bar. *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 2522–23, 73

L.Ed.2d 116 (1982); *Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 700–701, 58 L.Ed.2d 717 (1979); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975).

■ Admission to the Bar is not under any circumstances an automatic right. Rather, it depends on three basic and unalterable prerequisites: good moral character, learning and demonstrated competence. Unless an applicant meets these qualifications, denial of admission must follow. Here, we are concerned only with the first.

■ Good moral character has many attributes, but none are more important than honesty and candor. The burden of establishing this requirement rests and remains with the applicant throughout every stage of the admissions process; and it includes an unremitting duty of candor to all persons charged with investigating and passing upon an applicant's qualifications. This is consonant with the prime obligation and responsibility of both the Board and this Court to protect the public from incompetent and dishonest lawyers, and to assure that those admitted to the Bar possess the requisite attributes of good moral character, learning and ability. The Board has faced that task squarely.

Green suggests that the Maryland ethics charges, even if they had been fully disclosed, were not of sufficient gravity to warrant denial of his application. But we do not address that. Any such question was rendered irrelevant by Green's conduct. Instead, the issue is one of integrity, based on Green's concealment, which he materially compounded by the disingenuous explanations he later offered. Thus, it is Green's conduct, related to the concealment of the Maryland ethics charges, which reflects so adversely upon his character. That is the issue the Board addressed, and it is the only proper one before us.

## III.

■ Green argues that no duty of candor was imposed upon him by Board rules, since

any such requirement was inapplicable to him. This is a strange argument indeed. First, as a general principle of Delaware law, it is well established that an applicant must "take care to make careful and accurate responses to the questions in the verified application". *In Re Brown,* Del.Supr., 402 A.2d 367, 368 (1979).

■ Second, Board Rule BR–52.7(d) provides:

"(d) Consistent with the requirements of DR 1–101 of the Delaware Lawyer's Code of Professional Responsibility, *all applicants* for admission to the Bar have a duty to be candid *and* to make full, careful and accurate responses and disclosures in all phases of the application and admission procedures. The Board relies on the responses and disclosures of persons applying for admission to the Bar, including but not limited to responses and disclosures on the application form and during any phase of the admission process. The Board must depend on an applicant to respond fully to its inquiries so that a proper assessment can be made of his fitness for admission to the Delaware Bar. Any lessening of this standard would permit an applicant *subjectively to relate past events in such a manner that the Board could not properly perform its duties under Supreme Court Rule 52(a)(1).* Thus, it is not proper for an applicant to give either a highly selective or sketchy description of past events reflecting on the applicant's qualifications for admission to the Bar, and then cast the burden on the Board to discover the remaining pertinent details. An applicant who violates this rule may be denied admission to the Bar." (Emphasis added).

Green argues that this rule applies only to persons seeking admission by taking the full bar examination, not to applications, such as his, for admission by motion following successful completion of a limited examination under Rule 53. Clearly and unequivocally, BR–52.7(d) applies the duty of

candor to "*all* applicants for admission to the Bar". Moreover, it refers to performance of the Board's duties under Supreme Court Rule 52(a)(1), which is specifically applicable to Green.[3]

Thus, as the Board correctly states, BR–52.7(d) is merely declarative of the obvious principle that applicants for admission to the Bar have a complete and total duty of candor concerning all aspects of the admissions process.

### IV.

Green claims that the Board's notice to him of the hearing was inadequate. The answer to this is found in the notice itself:

"The focus of the Board's inquiries will be upon your failure to disclose to the Board in response to Question 31 of your Application the existence, nature and status of [the Maryland ethics charges]."

Green argues that this did not apprise him of any issue respecting his lack of candor to James D. Griffin, Esquire, regarding disclosure of the Maryland ethics charges. Certainly, this was embodied in the notice to Green. He well knew that the issue arose from Mr. Griffin's initial review of his application, which document did not disclose the Maryland ethics charges. This was followed by Mr. Griffin's attempts to communicate with the Maryland Commission, efforts which first were thwarted by Green's carefully circumscribed waiver.

■ In administrative proceedings there is no requirement that a complaint enumerate each precise piece of evidence embraced within an obvious and well defined subject of investigation. The notice plainly was adequate.

Moreover, Green does not disclose any specific way in which he was prejudiced by the notice. There is no claim that he would have produced additional evidence if the Board's notice had detailed every instance of his lack of candor arising from his false answer to Question 31 on the application.

**3.** See note 2, supra.

The record discloses that at the hearing Green made no claim of surprise, and in his first application to this Court for expedited relief, filed several days after the Board's decision, Green said nothing of being surprised or prejudiced by the Board's inquiries relating to his dealings with Mr. Griffin. Under the circumstances it is apparent that the record fully supports the adequacy of notice to Green, and his arguments to the contrary have neither factual nor legal bases.

## V.

Finally, Green argues that the record is insufficient to support the Board's findings and conclusions regarding his lack of candor. He urges upon us an independent review of the record to make de novo findings of fact and conclusions of law.

This ignores certain well established rules of appellate procedure in this Court. Under Rule 52(a) appeals from the Board are "determined from the record of the matter before the Board ... and not by means of a hearing de novo. Findings by the Board relating to disputed issues of fact and credibility will not be reversed by the Court so long as they are supported by substantial evidence". We see no reason to treat decisions of the Board any differently than those of other administrative agencies whose actions we review. The Board is an important arm of this Court, composed of experienced and able members of the Delaware Bar. Provided their findings are supported by substantial evidence and are the product of an orderly and logical deductive process, we accept them. Where, as here, the determination of facts turns on a question of credibility and the acceptance or rejection of "live" testimony before the Board, this Court, in the exercise of judicial restraint, must affirm. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972). Here, the record clearly meets the tests of legal sufficiency.

For the foregoing reasons, the decision of the Board, denying Green admission to the Delaware Bar, is AFFIRMED.