**Robert A. KOSSEFF, Respondent Below, Appellant,**

v.

**BOARD OF BAR EXAMINERS, Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted: Nov. 7, 1983.

Decided: March 19, 1984.

Frederick S. Kessler, Wilmington, for appellant.

Robert A. Kosseff, pro se (argued).

Lawrence C. Ashby (argued), Ashby, McKelvie & Geddes; William J. Wade, Richards, Layton & Finger, Wilmington, for appellee.

Before McNEILLY, MOORE and CHRISTIE, JJ.

MOORE, Justice:

This is an appeal from a decision of the Board of Bar Examiners ("Board") denying

the application of Robert A. Kosseff (Kosseff) for admission to the Delaware Bar. The Board found that Kosseff failed to prove, as required by Supreme Court Rule 52(a)(1), that he possessed such good moral character, reputation, and disposition as to qualify him to practice law in this State.[1] After reviewing the entire record, we conclude that the Board's findings are supported by substantial evidence and affirm its denial of Kosseff's admission to the Bar.

### I.

Following the Board's initial refusal of his application, Kosseff petitioned for a hearing before the Board, which was held on August 13, September 17, and October 4, 1982. At these proceedings evidence was adduced by stipulation and expert testimony of specific incidents demonstrating his lack of good moral character. Kosseff also presented evidence regarding these matters as well as his character in general.

The Board ruled that the burden was on Kosseff to show that he possessed the requisite good moral character and reputation, particularly in light of the serious questions placing his truthfulness and candor in issue. After hearing all the evidence, the Board concluded that Kosseff failed to meet this burden. We agree with that conclusion, which was supported by several factual findings to which we now refer.

Kosseff has been a member of the Pennsylvania Bar for over nine years. He was a law school professor from August 1977 until July 1980, when his contract was not renewed.[2] His teaching responsibilities included a course in legal ethics. From July to November 1980, Kosseff worked full-time in a political campaign. On January 10, 1981, he began working with an attorney in private practice in this State. In 1982, he applied for admission to the Delaware Bar. From 1980 until the summer of 1982, Kosseff was involved in a number of incidents reflecting adversely upon his good moral character.

The Board found that in 1981, while employed by the Delaware attorney, Kosseff went to a car dealership, which was the plaintiff in a civil action brought against a client of Kosseff's firm. Kosseff, then 32 years old, and a former legal ethics teacher, knew the dealership had retained counsel, but misrepresented himself as an official from a state consumer agency in order to gain information he considered crucial to the success of the civil action. When asked for credentials, Kosseff departed. He admitted this misconduct to the Board, but claimed that he was under the influence of alcohol at the time.

Apart from this extraordinarily serious incident, the Board found that Kosseff obtained a loan of $2,500 from a close personal friend, which he promised to secure by a lien on his condominium. Kosseff represented to this friend that he was planning to sell the condominium and that her lien would have to be satisfied before Kosseff received any of the sale proceeds. In fact, no such lien was ever placed on the property. The friend later learned that Kosseff had sold the property and asked him to repay her loan. Kosseff's first explanation was that the sale proceeds were insufficient to cover her lien. The friend then

---

1. Rule 52(a)(1), as then in effect stated in pertinent part:

   (a) ... no person shall be admitted to the Bar unless he shall have qualified by producing evidence satisfactory to the Board:

   (1) That he is a person of good moral character and reputation and that he possesses such qualities, aptitudes and disposition as fit him for the practice of law;

   Del.S.Ct.R. 52(a)(1). This rule has recently been amended, but the above cited provisions remain unchanged.

2. Kosseff's 1982 application for admission stated only that he left his law school teaching "to enter full time private practice". The application did not disclose that his teaching contract was terminated by the dean of the law school, that Kosseff immediately began working in a political campaign, and that Kosseff did not enter private practice until six months after the termination of his teaching position.

sought the advice of her brother, a member of the Delaware Bar, who soon learned the true state of affairs. Only then did Kosseff admit to his friend that he had never placed a lien in her name against his condominium. Subsequently, the friend's brother and Kosseff negotiated a repayment schedule, and the loan was eventually paid well in advance of the revised terms of payment. However, in June 1981, Kosseff's friend, from whom he was then estranged, wrote the Board about the entire incident and questioned Kosseff's "suitability for acceptance to the Delaware Bar". When the appellant learned of this he telephoned the complainant and amid curses and threats stated in part that "you haven't heard the end of this yet".

On the same day Kosseff told the complainant's brother that if he had to, he would deny that he had agreed to place a lien on the condominium. When Kosseff was asked if he intended to perjure himself, he stated "[t]his is my career at stake. Off the record, if I have to, I'll do what I have to". Kosseff then threatened to bring criminal charges in Pennsylvania against the complainant for allegedly breaking and entering his home. Subsequently, Kosseff told the complainant's brother that if she would withdraw her letter to the Board, he would repay the balance of the loan. Kosseff also stated that otherwise, "it's going to get very messy for her".

In addition to the car dealership incident and the loan transaction, the Board determined that Kosseff, although not admitted to practice in Delaware, appeared *pro hac vice* before various Delaware courts on 24 occasions, and even did so after receiving notice of an order specifically denying him permission to make any further appearances as counsel in Family Court. Appellant admitted that he made no attempt to obtain suspension of this order prior to his appearance, despite adequate time to do so. He also admitted that he failed to inform the presiding Master of the order. To make matters worse, Kosseff told this

Court at oral argument that based on his own standards of propriety he would violate the order again.

In addition to these *pro hac vice* appearances, the record establishes that Kosseff has attended and taken depositions and participated in several pre-trial conferences in Delaware proceedings without being admitted to the Bar. The Board also found that in soliciting a Superior Court judge to act as his preceptor, Kosseff failed to inform the judge of either his numerous *pro hac vice* appearances or of his misrepresentations to the car dealership.

In the course of Kosseff's activities in the Delaware courts, he represented Suzanne Winters in two actions concerning the purchase and repair of an automobile. Ms. Winters sent a check to Kosseff's employer which she understood to be for filing fees in a Superior Court fraud action that Kosseff planned to bring. No complaint was filed on her behalf in Superior Court and the fee check was ultimately returned to Ms. Winters. In late July 1982, after numerous attempts to contact Kosseff, and after a default judgment was entered against her in a related matter, Ms. Winters telephoned Kosseff and informed him that she would complain to the state bar association. Kosseff responded by accusing her of being drunk or on drugs and by threatening to sue her for slander.

Regarding appellant's unauthorized practice of law, the Board also found that his name appeared under the lobby listing of "Attorneys" in a prominent Wilmington office building as "Robert Kosseff, Esq.". While he did not cause this listing to be posted, he was aware of it and did nothing to qualify or remove it.

## II.

On appeal, Kosseff asserts that the Board's standard, requiring him to prove his good moral character beyond a substantial doubt, violated his right to due process of law guaranteed by the Fourteenth Amendment. In particular, appellant claims that the evidence adduced at the

hearings was not rationally related to his ability to perform as an attorney. Second, Kosseff argues that the questioned loan transaction was the result of his close personal relationship with the lender, and that because she did not understand the term "lien", Kosseff's promise to place a lien on his condominium could not have induced her to make the loan. Appellant therefore concludes that the Board erred in finding that his promise to place a lien, and his failure to do so, amounted to fraud. Appellant further contends that the Board failed to fully advise him of the subject matter of the hearing, thereby violating the notice requirements of the Board's own rules. He also claims that the Board erroneously applied the Delaware Code of Professional Responsibility to measure his moral character and fitness for admission to the Bar. Finally, it is contended that the chairman of the Board improperly failed to recuse himself despite personal knowledge of allegedly disputed facts.

The Board responds that the record fully supports its findings concerning Kosseff's lack of good moral character. It also asserts that the standard of proof imposed upon Kosseff, i.e., proof beyond substantial doubt, is constitutional on its face and as applied. Finally, the Board argues that the appellant received a full, fair, and impartial hearing with appropriate notice of all questions presented. The alleged personal knowledge of the chairman of the Board related to the undisputed fact of Kosseff's listing as an attorney in the lobby directory of his office building. All that was done was to call this to the Board's attention. There was no occasion for the Board's chairman to testify. Nor is there any suggestion that the chairman had knowledge of any other circumstances regarding this matter.

### III.

Our standard of review is governed by Supreme Court Rule 52, which provides

that appeals from the Board are "determined from the record.... Findings ... related to disputed issues of fact and credibility will not be reversed by the Court so long as they are supported by substantial evidence". Del.S.Ct.R. 52(e). Provided the Board's findings are supported by substantial evidence and are the product of an orderly and logical deductive process, we accept them. *In re Green,* 464 A.2d 881, 887 (1983) (per curiam). *See* Del.S.Ct.R. 52(a), (e).

In *Green,* we stated that "[t]his Court, alone, has the responsibility for licensing and disciplining persons admitted to practice in Delaware". *Green,* 464 A.2d at 885. We also stated that:

the interest of this State in matters pertaining to the admission and regulation of lawyers practicing before our courts is essential to the primary governmental function of administering justice and in meeting our obligation to protect the public by assuring and maintaining high standards of conduct of persons admitted to this Bar.

*Id.* (citations omitted). Mindful of our responsibility for regulating the Bar of this State, we first address the applicant's constitutional claims.

We are satisfied that Kosseff's due process rights were not infringed by the Board. From the record it is clear that as early as June 24, 1982, he was given proper notice of the charges against him and of the requirement under Del.S.Ct.R. 52(a)(1) that he present "evidence satisfactory to the Board" that he is a person of good moral character.[3] At his request, the hearing was postponed until August 13, 1982. It is undisputed that the hearing lasted over three days and that Kosseff, represented by counsel, had the opportunity to and did in fact present evidence regarding the relevant incidents and his general character. It is also clear that the Board's

---

**3.** It should be noted that BR–51.6, under which Kosseff petitioned for a hearing on his application, provides in subsection (g) that "[t]he burden of proof shall always be on the applicant". BR–51.6(g).

adoption and application of the beyond substantial doubt standard was an attempt to bring the standard of proof within constitutionally permissible limits, consistent with United States Supreme Court precedent. *See Konigsberg v. State Bar of California,* 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810, *reh'g denied,* 354 U.S. 927, 77 S.Ct. 1374, 1 L.Ed.2d 1441 (1957); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). On balance, we find no deprivation of a liberty or property interest warranting reversal of the Board.

■ Turning to the Board's factual determinations, we conclude that these findings are supported by substantial evidence. *See In re Green,* Del.Supr., 464 A.2d 881, 887 (1983) (per curiam). In particular, we conclude that there is substantial evidence of misrepresentations and nondisclosures, as well as affirmative acts, by Kosseff which raise a substantial doubt as to his moral character. In so concluding, we note that the most important attributes of good moral character are honesty and candor. *Id.* at 885. This includes an unremitting duty of candor to all persons charged with investigating and passing upon an applicant's qualifications. *Id. See In re Brown,* Del.Supr., 402 A.2d 367, 368 (1979). Moreover, the attributes of honesty and candor are absolute prerequisites to the admission to our Bar. The maintenance of such high standards of conduct promotes the State's interest in the administration of justice and the protection of the public. For these reasons, we reject the appellant's argument that the evidence bearing on his honesty and candor is not rationally related to his ability to perform as an attorney.

Kosseff admitted that in 1981 he entered the offices of a car dealership and misrepresented himself as a state official in order to obtain information by purposeful deceit. This information was crucial to a civil action pending between the dealership and a client of Kosseff's firm. Kosseff justified his conduct by claiming that he was under the influence of alcohol, notwithstanding that the incident occurred at mid-afternoon of a working day, and was the act of a former law school ethics instructor, who was then 32 years old.

As to Kosseff's loan from a close personal friend, there is substantial evidence supporting the Board's finding that she relied upon Kosseff's promise to place a lien on his condominium, and given that reliance, the funds were advanced to him. Although Kosseff eventually paid the loan, there is substantial evidence of misrepresentation, the consequences of which he attempted to avoid by threats to bring criminal charges against the lender, to make things "messy" for her, and if all that failed, to perjure himself before the Board, if necessary.

In addition, there is substantial evidence that Kosseff appeared *pro hac vice* before the Family Court in defiance of an outstanding order prohibiting such conduct. Kosseff's justification for this appearance is untenable, given his failure to disclose the order to the presiding Master and his failure to clear his appearance with any Family Court judge. It is made profoundly worse by his continued insistence that he would do it again.

Moreover, there is substantial evidence supporting the Board's findings that Kosseff failed to disclose the circumstances surrounding the abandonment of his law school teaching position, and that in soliciting a respected judge of the Superior Court, Kosseff failed to disclose incidents and conduct bearing on his moral character.

In addition, there is substantial evidence that when a former client charged Kosseff with failing to protect her interests, Kosseff responded by threatening her with a slander suit. Finally, Kosseff's name and the appellation "Esq." appeared in the lobby listing of attorneys of a prominent Wilmington office building. He knew of this listing, but took no steps to remedy the erroneous impression thereby created that he was a member of the Delaware Bar.

Thus, after reviewing the entire record, we conclude that the Board's factual findings were supported by substantial evidence.

As for Kosseff's claim that the Board failed to advise him of the subject matter of the hearing, the record indicates that by June 24, 1982, he was informed of the following matters under investigation: the car dealership incident, the loan transaction, the *pro hac vice* appearances, the violation of the Family Court order, and the lack of candor in soliciting a preceptor. Two weeks before August 13, 1982, the initial hearing date, Kosseff was advised of two additional issues: the failure to protect a client's interests and the failure to remedy the lobby listing. In our view, two weeks was more than enough time to prepare a defense regarding these matters. However, Kosseff was on notice that all of these issues were relevant to his moral character, and were the subject of Board inquiry. The notice was plainly adequate. *See Green*, 464 A.2d at 886–87.

■ Thus, we decline to accept Kosseff's arguments that the Delaware Code of Professional Responsibility cannot properly be considered as a standard in admissions proceedings, and that the Chairman of the Board should have recused himself. Rather, we note that such knowing violations, pervading the spectrum of the Code, are highly probative of character.[4] We note further that the Chairman's actions in forwarding undisputed information to the Board were proper and did not in any way taint the impartiality of the proceedings below. It is undisputed that the Chairman came upon the lobby listing of Kosseff purely by chance. In accordance with his duty as an officer of this Court, the Chairman contacted another member of the Board, and together, they retrieved the listing as evidence relevant to the Board's investigation of Kosseff. Any argument that the Chairman's conduct impermissibly blended the prosecutorial and adjudicatory functions of the Board has been laid to rest by this Court's opinion in *In re Kennedy*, 472 A.2d 1317 at 1327–1328 (Del.Supr. 1984).

## IV.

■ Kosseff now contends that he has been "punished enough" by the delay which these proceedings have imposed upon his admission to our Bar. That view is a misconception of the roles of the Board and this Court in the admissions process. Denial of admission to the Bar is not a punitive action. Rather, it is based on the principle that the Court has an unyielding obligation to "protect the public from incompetent and dishonest lawyers, and to assure that those admitted to the Bar possess the requisite attributes of good moral character, learning and ability". *In re Green*, 464 A.2d at 885. Once again, the Board has faced that task squarely and reached the only proper result open to it on this record.

Based on the foregoing, we conclude that there is substantial evidence that Kosseff clearly lacks such good moral character as to fit him for the practice of law in this State. In the Court's view there could not be any other acceptable result but to deny this application.

\*    \*    \*

AFFIRMED.

---

4. Without making an exhaustive list on the subject, it appears that at the very minimum Kosseff's misconduct involves the violation of DRs 1–102(A)(1), (4)–(6); 3–101(B); 7–102(A)(1), (3), (5), (8); 7–104(A)(1); 7–105(A); 7–106(C)(5), (7); and Canon 9.