**Ernest JOSEPH, Claimant–Below, Appellant,**

**v.**

**C.C. OLIPHANT ROOFING CO., Employer–Below, Appellee.**

**No. 94A–12–002–HDR.**

Superior Court of Delaware, Kent County.

Submitted: July 25, 1997.
Decided: Nov. 26, 1997.

---

John J. Schmittinger and Walt F. Schmittinger, of Schmittinger and Rodriguez, P.A., Dover, for Claimant–Below, Appellant.

Natalie S. Wolf and Cassandra F. Kaminski, of Young, Conaway, Stargatt & Taylor, Wilmington, for Employer–Below, Appellee.

Sherry V. Hoffman, Deputy Attorney General, Department of Justice, Wilmington.

## OPINION

RIDGELY, President Judge.

This proceeding arises out of a worker's compensation claim filed with the Industrial Accident Board ("Board") by plaintiff-appellant, Ernest Joseph ("Joseph") against defendant-appellee C.C. Oliphant ("Oliphant"), seeking commutation of compensation for work related injuries and an award of attorney's fees to be paid by Joseph. Between December, 1977 and October, 1994, counsel recovered in excess of $135,000.00 in disability benefits for Joseph. Subsequently, the Board approved an agreed upon commutation of workers' compensation partial disability benefits in the amount of $15,500.00. The Board allowed Joseph's counsel an attorney's fee of $2,250, the statutory limit, even though counsel had a written agreement with his client for payment of a thirty percent contingency fee.[1] Counsel filed an appeal with this Court to challenge the Board's fee award. This Court granted counsel's petition to certify questions of constitutional law to the Delaware Supreme Court on the authority of the Board to approve attorney's fees.

The Supreme Court initially accepted the certified questions,[2] and allowed the Board to intervene.[3] Ultimately, the Supreme Court declined to answer the certified questions and dismissed the proceeding because "im-

---

1. *Joseph v. C.C. Oliphant Roofing Co.*, IAB Hearing No. 545714 (Nov. 16, 1994); 19 *Del. C.* § 2127.

2. *Joseph v. C.C. Oliphant Roofing Co.*, Del.Supr., No. 258, 1995, Veasey, C.J. (July 7, 1995) (ORDER).

3. *Joseph v. C.C. Oliphant Roofing Co.*, Del.Supr., No. 258, 1995, Walsh, J. (July 28, 1995) (ORDER).

portant and urgent reasons" no longer justified consideration of the appeal following the enactment of amendments to 19 *Del. C.* § 2126 and 2127.[4] Upon reviewing the record on remand, this Court remanded the matter to the Industrial Accident Board, with instructions to the Board to identify the rationale for the fee award pursuant to the factors enumerated in *General Motors Corp. v. Cox.*[5] On March 6, 1997, the Board issued its decision on remand.[6] This is an appeal of the Board's decision on remand. For the reasons which follow, I conclude the Board's decision must be affirmed.

## I. STANDARD OF REVIEW

 On appeal from the Industrial Accident Board, the function of this Court is to determine whether the Board's decision is supported by substantial evidence and free from legal error.[7] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[8] The Superior Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[9] It merely determines if the evidence is legally adequate to support the Board's factual findings.[10]

## II. ANALYSIS

On appeal, appellant framed two issues for review by this Court. The first is a constitutional issue and the second relates to factors used by the Board to determine the amount of an attorney's fee award. The constitutional issue is whether 19 *Del. C.* §§ 2126 and 2127, prior to their amendment, violated a basic constitutional principle that the Delaware Supreme Court has sole and exclusive jurisdiction over all matters affecting governance of the bar. Prior to amendment in 1995, section 2126 stated that "[f]ees of attorneys and physicians for services under Part II of this title shall be subject to the approval of the Board."[11] Similarly, section 2127 provided as follows:

(a) A reasonable attorney's fee in an amount not to exceed 30% of the award or $2250, whichever is smaller, shall be allowed by the Board to any employee awarded compensation under this chapter and Chapter 23, and taxed as costs against the party.

(b) No compensation, other than the fee provided by subsection (a) of this section, may be received by an attorney for services before the Board; provided, however, that this limitation shall not apply to any fee for services rendered by an attorney on appeal from an award or a denial of an award by the Board.[12]

Essentially, appellant contends that because the Supreme Court has sole authority over the fees of attorneys in this state, the General Assembly violated the Doctrine of Separation of Powers when it enacted section 2126,

---

4. *Joseph v. C.C. Oliphant Roofing Co.*, Del. Supr., 672 A.2d 50 (1996) (ORDER).

5. Del.Supr., 304 A.2d 55 (1973). *Joseph v. C.C. Oliphant Roofing Co.*, Del.Super., No. 94A–12–002, Ridgely, P.J., 1996 WL 527221 (August 16, 1996) (ORDER).

6. *Joseph v. C.C. Oliphant Roofing Co.*, IAB Hearing No. 545714 (March 6, 1997).

7. *Devine v. Advanced Power Control, Inc.*, Del.Super., 663 A.2d 1205, 1209 (1995) (citing *General Motors Corp. v. Freeman*, Del.Supr., 164 A.2d 686, 688 (1960); *Johnson v. Chrysler Corp.*, Del. Supr., 213 A.2d 64, 66 (1965); *General Motors Corp. v. Jarrell*, Del.Super., 493 A.2d 978, 980 (1985)).

8. *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, Del.Supr., 636 A.2d 892, 899 (1994); *Battista v. Chrysler Corp.*, Del.Supr., 517 A.2d 295, 297 (1986), *app. dism.*, Del.Supr., 515 A.2d 397 (1986).

9. *Johnson v. Chrysler Corp.*, Del.Supr., 213 A.2d 64, 66 (1965).

10. 29 *Del. C.* § 10142(d).

11. 19 *Del. C.* § 2126, *amended* 70 Del. Laws, c. 172 (1995) (deleting "attorneys and" following "Fees of").

12. 19 *Del. C.* § 2127 (1966), *amended by*, 19 *Del. C.* § 2127 (1995). In 1962 the General Assembly amended section 2127, adding language providing for an attorney fee award of 30% of the claimant's award or $500.00, whichever was the lesser amount. 53 *Del. Laws*, c. 38. Four years later, section 2127 was amended increasing the maximum fee award to $2250.00. 55 *Del.* Laws, c. 451. *See Ham v. Chrysler Corp.*, Del.Supr., 231 A.2d 258, 262 n. 3 (1967).

permitting the Board general authority over all fees charged by claimants' attorneys for services related to workmen's compensation matters, and section 2127, providing the Board with autonomy over fee awards by setting an arbitrary limitation on fee awards and by giving the Board authority to award a fee less than the statutory maximum.

■ It is undisputed here that the doctrine of separation of powers is integral to the fabric of the Delaware Constitution. "The doctrine exists because it is crucial to the survival of the judiciary as an independent, functioning and co-equal branch of government."[13] However, the Supreme Court has recognized that "strict adherence and complete separation of governmental departments is neither desirable nor intended .... [Instead, a] certain degree of flexibility in the application of the Doctrine is essential to the maximum success of our constitutional system ...."[14] The Delaware Supreme Court set forth the following test to determine whether an unconstitutional usurpation of power has occurred, in violation of the separation of powers doctrine:

First is the essential nature of the power being exercised. Is the power exclusively [judicial] or legislative or is it a blend of the two? A second factor is the degree of control by the legislative department in the exercise of the power. Is there a coercive influence or a mere cooperative venture? A third consideration of importance is the nature of the objective sought to be attained by the legislature. Is the intent of the legislature to cooperate with the [judiciary] by furnishing some special expertise of one or more of its members or is the objective of the legislature obviously one of establishing its superiority over the [judicial] department in an area essentially [judicial] in nature? [15]

A review of these factors, as they relate to sections 2126 and 2127, demonstrates that although the power being exercised is exclusively judicial, neither section 2126 nor section 2127 are unconstitutional usurpations of that power in the present context.

The separation of powers doctrine gave rise to the fundamental constitutional principle that the Delaware Supreme Court "alone, has sole and exclusive responsibility over all matters affecting governance of the Bar." [16] Fees charged by Delaware attorneys are subject to the Court's regulation, pursuant to the Delaware Lawyers' Rules of Professional Conduct, Rule 1.5.[17]

The Court's jurisdiction over members of the Bar is not statutorily based. Instead, the roots of the Court's power and responsibility can be traced back to the Colonial Act of 1726 and the English system of jurisprudence as it existed at that time.[18] From the beginning, the legal profession was "affected with a public interest and was created for the protection of the public." [19] Because regulation of attorney's fees is a judicial function,

**13.** *White v. Bd. of Cty. Commissioners of Pinellas Cty.*, 537 So.2d 1376, 1378 (Fla.1989) (quoting *Rose v. Palm Beach Cty.*, 361 So.2d 135, 137 (Fla.1978)).

**14.** *In re Opinions of the Justices*, Del.Supr., 380 A.2d 109, 114 (1977) (citations omitted). *See also In re Opinion of the Justices*, Del.Supr., 88 A.2d 128, 138 (1952) (stating that the doctrine has not been adhered to rigorously).

**15.** *Opinion of the Justices*, 380 A.2d at 115 (quoting *State of Kansas, etc. v. Bennett, Governor, etc.*, 219 Kan. 285, 547 P.2d 786, 792 (1976)).

**16.** *Simmons v. Delaware State Hospital*, Del. Supr., 660 A.2d 384, 391 (1995) (quoting *In Re Appeal of Infotechnology, Inc.*, Del.Supr., 582 A.2d 215, 220 (1990)). *See In re Nenno*, Del. Supr., 472 A.2d 815, 819 (1983) ("[T]his Court's exclusive right to govern the practice of law ... inheres in and derives from the very nature of the doctrine of separation of powers as it is known in Delaware.").

**17.** *Simmons*, 660 A.2d at 391 n. 4. Effective October 1, 1985, the Delaware Lawyer's Code of Professional Responsibility was superseded by the Delaware Lawyer's Rules of Professional Conduct. Thus, DR 2–106(B) was superseded by Prof. Con. R. 1.5(a). However, the text of Prof. Con. R. 1.5(a) remains the same as DR 2–106(B).

**18.** *Delaware Optometric Corp. v. Sherwood*, Del. Supr., 128 A.2d 812, 816 (1957) (citing Colonial Laws, Vol. 1, p. 100). While 10 *Del. C.* § 1905 provides for the admission of attorneys to the Bar, the State has not sought to regulate the legal profession by statute. *Id.*

**19.** *Delaware Optometric*, 128 A.2d at 816; *see also In re Green*, Del.Supr., 464 A.2d 881, 885 (1983).

any action the Board takes is subject to judicial review.

In making this review the Court takes notice of the purpose of the Delaware Workmen's Compensation Act ("Act"). The general purpose of the Act is to provide employees with an easily accessible mechanism through which injured workers could seek compensation for their injuries, while assuring that the injured employees would not suffer excessive charges for services rendered in securing that compensation.[20] Specifically, the General Assembly enacted sections 2126 and 2127 intending to relieve, at least in part, a successful claimant from the burden of paying legal fees.[21] Similar concerns prompted Congress to enact the Veterans' Benefits Act ("VBA").[22] The results of challenges to fee limitations set by the VBA are a helpful analogy here.

Congress enacted Title 38 of the United States Code, the VBA, establishing an administrative system for granting service-connected death or disability benefits to veterans.[23] In doing so, Congress stated two major purpose for creation of the VBA:

> [T]o protect the interests of veterans from the perceived threat that agents or attorneys would charge excessive fees for their services, which essentially required only the preparation and presentation of an application for benefits.... Secondarily, ... is the premise that, because the process for seeking veterans benefits has historically been intentionally structured as informal and non-adversarial, the assistance of paid agents or attorneys was not deemed

necessary or desirable in the overwhelming majority of cases.[24]

As a result, 38 U.S.C. § 3404(c) prohibited attorneys from receiving an attorney's fee award in excess of ten dollars for successful representation of a claimant in front of the Board of Veterans' Appeals ("BVA").[25]

In *Walters v. National Association of Radiation Survivors*, the United States Supreme Court granted certiorari to determine whether the attorneys fee limitation provided for in 38 U.S.C. § 3404(c) violated the due process clause of the Fifth amendment.[26] Specifically, the claimants, veterans seeking benefits from the Veterans' Administration ("VA"), contended that the ten dollar attorney fee cap, within section 3404(c), deprived them of an opportunity to retain expert legal counsel in presenting their claims to the VA. In reversing the district court's finding that the claimants' fifth amendment rights had been violated, the Court stated that "[j]udging the constitutionality of an Act of Congress is properly considered 'the gravest and most delicate duty that this Court is called upon to perform.'"[27] Thus, termination of a protected interest requires application of a balancing test.

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional

---

**20.** *Huff v. Industrial Accident Board*, Del.Super., 430 A.2d 796, 797 (1981) (citations omitted).

**21.** *Ham*, 231 A.2d at 263.

**22.** 38 U.S.C. § 3404 (1958).

**23.** *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 308, 105 S.Ct. 3180, 3183, 87 L.Ed.2d 220 (1985).

**24.** H.R.Rep. No. 100–963, at 57 (1988), *reprinted in* 1988 U.S .C.C.A.N. 5782.

**25.** *Walters*, 473 U.S. 305, 308, 105 S.Ct. 3180, 3183, 87 L.Ed.2d 220 (1985).

**26.** 473 U.S. 305, 308, 105 S.Ct. 3180, 3183, 87 L.Ed.2d 220 (1985). Title 38 U.S.C. § 3404(c) provides:

> The Administrator shall determine and pay fees to agents or attorneys recognized under this section in allowed claims for monetary benefits under laws administered by the Veterans' Administration. Such fees ... (2) shall not exceed $10 with respect to any one claim ....

38 U.S.C. § 3404(c) (1982).

**27.** 473 U.S. 305, 320, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (quoting *Rostker v. Goldberg*, 453 U.S. 57, 64, 101 S.Ct. 2646, 2651, 69 L.Ed.2d 478 (1981) (quoting *Blodgett v. Holden*, 275 U.S. 142, 148, 48 S.Ct. 105, 107, 72 L.Ed. 206 (1927) (Holmes, J.))).

or substitute procedural requirement would entail.[28]

Concluding that the fee limitation did not present a denial of due process, the Court opined that "the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a· safeguard."[29] Moreover, "even apart from the frustration of Congress' principal goal of wanting the veteran to get the entirety of the award, the destruction of the fee limitation would bid fair to complicate a proceeding which Congress wished to keep as simple as possible."[30]

In subsequent decisions, federal courts refrained from holding section 3404(c) unconstitutional, preferring instead to accord Congress the customary deference a co-equal branch of government is owed.[31] Recognizing the constitutional implications of the miserly $10 fee award of section 3404(c), Congress amended the fee award to allow a percentage of benefits awarded.[32]

The Supreme Court's deference allowed Congress an opportunity to amend the statutory fee limit of Title 38 to ensure its fairness so claimants could obtain expert legal representation. The Court's deference demonstrates a cooperative venture between these co-equal branches of the federal government to protect the claimants' constitutional rights.

A similar deference is due here because, at its roots, the Act operates as a cooperative venture between the judiciary and the legislature to facilitate the interest both branches have in providing a prompt and sure means of compensating injured workers and to relieve employers and employees of the expense and uncertainty of civil litigation.

Such a legislative enactment, demonstrating a cooperative venture between the legislature and the judiciary to provide employees with a prompt remedy for workplace injuries, supports a departure from the strict application of the separation of powers doctrine. In the *Opinions of Justices,* the Court addressed the issue whether a statute providing for the rendering of advisory opinions by the Delaware Supreme Court upon the Governor's request violated the separation of powers doctrine. Citing a long history of legislative enactments whereby certain non-judicial duties and powers were conferred upon judges, the Court concluded that "such chain of legislative enactments afforded 'a practical construction by the people of the State' ... [authorizing ] an exception to the Doctrine."[33] The Court correctly perceived that the legislature's objective was to create a cooperative venture between the judiciary and the executive branch, not to establish the Court's superiority over the executive branch. Similarly, sections 2126 and 2127 are a cooperative venture in that they permit the Board to review and establish attorney's fee awards, subject to judicial review.

This Court can envision a point where a fixed dollar fee cap imposed by the General Assembly may trigger a constitutional deprivation.[34] For example, an unusually low at-

---

**28.** 473 U.S. 305, 313, 105 S.Ct. 3180, 3185, 87 L.Ed.2d 220 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

**29.** 473 U.S. 305, 321, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220.

**30.** 473 U.S. 305, 326, 105 S.Ct. 3180, 3192, 87 L.Ed.2d 220.

**31.** *See National Ass'n of Radiation Survivors v. Derwinski,* 994 F.2d 583 (9th Cir.1992), *as amended on denial of reh'g,* (June 18, 1993), *cert. denied, National Ass'n of Radiation Survivors v. Brown,* 510 U.S. 1023, 114 S.Ct. 634, 126 L.Ed.2d 592 (1993); *Gendron v. Saxbe,* 389 F.Supp. 1303 (D.Cal.1975), *aff'd,* 423 U.S. 802, 96 S.Ct. 9, 46 L.Ed.2d 23 (1975).

**32.** 38 U.S.C. § 5904(d)(1) (1991). Congress enacted the Veterans' Judicial Review Act ("VJRA"), Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988), which repealed the $10 fee limit in 38 U.S.C. § 3404(c). VJRA, Pub.L. No. 100–687, Div. A, Title I, § 104(a), §§ 401, 403, 102 Stat. At 4018, 4122. Section 3404 was subsequently renumbered 5904. VJRA, Pub.L. 100–687, Div. A, Title I, § 104(a), Nov. 18, 1988, 102 Stat. 4108; renumbered § 5904 and amended Pub.L. 102–40, Title IV, § 402(b)(1), (d)(1), May 7, 1991, 105 Stat. 238, 239 [hereinafter ("5904")].

**33.** *Opinion of the Justices,* 380 A.2d at 114 (quoting *Opinions of the Justices,* 88 A.2d at 139).

**34.** A state by state review of the attorney fees permitted under their respective workmen's compensation statutes show that Delaware is among a small minority of states that utilize a specific dollar fee cap. Workers' Comp. Bus. Mgmt. Guide (CCH) ¶ 9,835.

torney fee cap may inhibit attorneys from representing injured workers in front of the Industrial Accident Board thereby depriving the injured worker of his right to obtain expert legal counsel. Further an unreasonably low fee cap may materially impair the abilities of counsel to effectively represent their clients, without working a confiscation of the attorney's time, energy and talent.[35] The General Assembly has been sensitive to this in the past by amending the dollar limitation when inflation has increased wages and yet eroded the value of attorneys fees.[36]

In this case, counsel was on notice of the statutory cap on attorney's fees. The record in this case is devoid of evidence tending to show any difficulty by Joseph in obtaining counsel, or that counsel's time, energy and talent in achieving a commutation were effectively confiscated by the statutory attorney's fee limitation. This Court holds on this record that the constitutional challenge is without merit.

Given the fee limitation of the statute which I have found to be constitutional, counsel's second issue involving assignments of error by the Board in the calculation of the award under *Cox* are moot.

For the foregoing reasons, the decision of the Industrial Accident Board is *AF-FIRMED*.

**IT IS SO ORDERED.**

---

**35.** *Scruggs,* 545 So.2d at 912 (citing *Makemson v. Martin Cty. .,* 491 So.2d 1109, 1114–15 (Fla. 1986)). *See also LeJeune v. Trend Services, Inc., 699 So.2d 95* (1997); *Granger v. Nelson Logging,* 685 So.2d 400 (La.Ct.App.1996).

**36.** See fn. 12, *supra.*