**In the interest of Ann Margaret PHILLIPS**[1]**, Born August 14, 2001.**

No. CS01–04269.
Petition No. 01–25453.

Family Court of Delaware, Sussex County.

Submitted: March 4, 2002.
Decided: July 1, 2002.

James S. Reichert, Department of Justice, Georgetown, Delaware, for the Division of Family Services.

Margaret R. Cooper, Hudson, Jones, Jaywork & Fisher, Georgetown, for mother.

Bruce A. Rogers, Georgetown, for father.

Kristin S. Gibbons, Georgetown, for Court Appointed Special Advocate.

MILLMAN, J.

In this case, the Court is called upon to determine if title 11, section 1103(d) of the Delaware Code violates the separation of powers doctrine by unjustifiably permitting the Department of Services for Children, Youth and Their Families ("the Department") to be the sole arbiter regarding whether reunification services are to be provided to a parent after this Court determines the parent has committed an act under title 13, section 1103(a)(4) of the Delaware Code.

After reviewing the separation of powers doctrine and the legislative history of title 11, section 1103(d), I find that section 1103(d) does not violate the doctrine. Accordingly, in those cases where this Court determines a parent to have violated title 13, section 1103(a)(4) of the Delaware Code, the Department shall be the sole arbiter as to whether reunification services are to be provided.

---

1. Pseudonyms have been assigned to the parties to protect their identities.

## Facts

On August 14, 2001, custody of Ann Margaret Phillips was granted to the Department of Services for Children, Youth and Their Families ("the Department" or "DFS"). The child's parents are Kristin A. Phillips ("mother") and Mark T. Harper ("father").[2]

DFS moved this Court for a finding that mother had committed an offense set forth in title 13, section 1103(a)(4) of the Delaware Code[3] shortly after Ann came into the custody of DFS. Such a finding would form a ground for DFS to bring a termination of parental rights action against mother. On October 30, 2001, this Court found that the Superior Court of the State of Delaware had convicted mother of the manslaughter of Ann's sibling on February 14, 1996. Pursuant to title 13, section 1103(a)(4)(a) of the Delaware Code, mother's conviction is a ground for DFS to move to terminate mother's parental rights. DFS now contends that because a ground to terminate mother's parental rights has been established under section 1103(a)(4)(a), DFS becomes the sole arbiter regarding whether or not reunification services are to be offered to mother. DFS further contends that if this Court requires it to offer services to the offending parent, in contravention to section 1103(a)(5)(d), this Court will violate the separation of powers doctrine.

Mother argues that there is no statutory prohibition against offering her reunification services, even after this Court found she committed an act which forms a basis to terminate her parental rights under section 1103(a)(4)(a). Mother also argues that it is this Court, and not the Department, which is charged with the responsibility of determining if reunification services were properly withheld from a parent.

Lastly, mother argues that to permit the Department to unilaterally decide whether or not a parent is to receive services would be an infringement upon the authority of the judicial branch of government.

## Reasonable Efforts

With the enactment by Congress of the Adoption Assistance and Child Welfare Act of 1980 ("the Child Welfare Act"), this Court became charged with the duty of "insur[ing] meaningful compliance with the Child Welfare Act of 1980[4]...and the appropriate Delaware Law...."[5] Included in this duty of insuring compliance with the applicable federal and state law, is the Court's obligation to determine if the Department, in a given case, is required to exercise reasonable efforts. Where the Department is obligated to provide reunification services, the Court is required to determine whether these services are rea-

---

**2.** Father was scheduled for a paternity test on November 13, 2001, but did not appear. The Court has had no contact with father since October 30, 2001.

**3.** **Del.Code Ann. tit. 13, § 1103. Grounds for termination of parental rights.**

(a) The procedure for termination of parental rights for the purpose of adoption or, if a suitable adoption plan cannot be effected, for the purpose of providing for the care of the child by some other plan which may or may not contemplate the continued possibility of

eventual adoption, may be initiated whenever it appears to be in the child's best interest and that 1 or more of the following grounds exist:
    (4) The respondent has been found by a court of competent jurisdiction to have:
      a. Committed a felony level offense against the person, as described within subchapter II of Chapter 5 of Title 11, in which the victim was a child;

**4.** Public Law 96–272.

**5.** *In re Burns*, 519 A.2d 638 at 649 (Del.1986).

sonable in the particular case.[6]

■ In addition to federal law, Delaware has its own statutory authority requiring reunification services to dependent children and their families.[7] This Court's responsibility, and obligation, to determine if the reasonable efforts requirement has been met under both federal and state law is well settled. As our Supreme Court has stated, "Under Delaware Law, termination of parental rights can only occur if the Family Court is satisfied DFS exerted all reasonable efforts...to reunify [children] with their natural parent."[8]

In 1997, Congress amended the Child Welfare Act. One amendment to that act eliminated the need for states to provide reunification services to a parent if that parent was found to have subjected a child to "aggravating circumstances." These aggravating circumstances were defined to be specific enumerated acts committed against the child or that child's sibling who is the subject of the case before the Court.[9]

Shortly after the passage of 42 U.S.C. § 671(a)(15)(D), Delaware amended its termination of parental rights statute to include grounds which reflect the federal Act.[10] It is not disputed that mother has been found to have violated section 1103(a)(4)(a) by committing the manslaughter of Ann's sibling. At the time section 1103(a)(4) was adopted, our General Assembly also enacted § 1103(a)(5)(d) which states:

> (d) The Department is not required to perform, but is not prohibited from performing, reunification and related services as outlined in Chapter 90 of Title 29 when the grounds for termination of parental rights are those stated in subsections (a)(2), (4) or (6) of this section.

The Department contends the language of section 1103(d) eliminates the requirement that reunification services be offered to a parent in cases where this Court finds the parent committed an act under section 1103(a)(4).

---

6. *Id.*

7. Del.Code Ann. tit. 29, § 9003 (1999).

8. *Jamison v. DFS*, 768 A.2d 469, 2001 WL 257810 at *4 (Del.2001) *citing In re Burns*, 519 A.2d 638 at 644 (Del.1986). *See also, In re Heller*, 669 A.2d 25 (Del.1995) which affirmed this Court's authority to determine if reasonable efforts were required in a particular case.

9. (D) reasonable efforts of the type described in subparagraph (B) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that-
   (i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse);
   (ii) the parent has-
      (I) committed murder (which would have been an offense under section 1111(a) of Title 18, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;
      (II) committed voluntary manslaughter (which would have been an offense under section 1112(a) of Title 18, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;
      (III) aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter; or
      (IV) committed a felony assault that results in serious bodily injury to the child or another child of the parent; or
   (iii) the parental rights of the parent to a sibling have been terminated involuntarily;

10. *Id.*

The 1997 Amendment to the Child Welfare Act no longer required states to provide reunification services to receive federal funding in cases where aggravating circumstances exist. As mother contends, under this amendment, states are not prohibited from offering services in cases where aggravating circumstances exist.[11] Our General Assembly, in contrast to the blanket exception contained in the federal act, adopted a more moderate policy. The policy recognizes there may be cases where, despite a finding of an aggravated circumstance, facts may exist that justify the offering of services by the Department to a parent and child. The offering of these services may then lead to the safe reunification of that family.

### Separation of Powers

It is undisputed...that the doctrine of separation of powers is integral to the fabric of the Delaware Constitution.... However, the Supreme Court has recognized that 'strict adherence and complete separation of governmental departments is neither desirable nor intended.... [Instead, a] certain degree of flexibility in the application of the Doctrine is essential to the maximum success of our constitutional system....'[12]

In *Opinion of the Justices*,[13] our Supreme Court set forth a test to be applied in those cases where it is alleged a particular legislative enactment violates the separation of powers doctrine. The Court said,

First is the essential nature of the power being exercised. Is the power exclusively executive or [judicial] or is it a blend of the two? A second factor is the degree of control by the [executive] department in the exercise of the power. Is there a coercive influence or a mere cooperative venture? A third consideration of importance is the nature of the objective sought to be attained by the legislature. Is the intent of the legislature to cooperate with the [judiciary] by furnishing some special expertise of one or more of its members or is the objection of the [executive] obviously one of establishing its superiority over the [judiciary] in an area essentially [judicial] in nature?[14]

■ The power in question being exercised in this case is the provision of services to a parent and child to assist them in family reunification. This exercise of power is clearly an executive branch function. The entitlement to reunification services is a statutory one and does not evolve from a constitutional right.[15]

The General Assembly, by adopting section 1103(d), chose to deny reunification services to a class of parents who have been convicted of felonious behavior and other specific acts against their children as set forth in section 1103(a)(4). As a matter of public policy, our legislature, howev-

---

**11.** Seven states have statutes which permit the court to order reunification services in cases where aggravating circumstances exist: Cal. Welf. & Inst.Code § 361.5 (2002); Me. Rev.Stat. Ann. tit. 22, § 4036 (2002); Kan. Stat. Ann. § 38–1565 (2001); N.H.Rev.Stat. Ann. § 169–C:24–a (2002); N.M. Stat. Ann. § 32A–4–25 (2001); N.Y. Fam. Ct. Act Law § 1039–b (2001); N.C. Gen.Stat. § 7B–507 (2001).

**12.** *Joseph v. C.C. Oliphant Roofing Co.*, 711 A.2d 805 at 808 (Del.Super.1997).

**13.** *Opinion of the Justices*, 380 A.2d 109 at 115, (Del.1977).

**14.** *Opinion of Justices*, 380 A.2d 109 at 115 (Del.1977).

**15.** *L.R. & C.R. v. Utah*, 967 P.2d 951 (Utah Ct.App.1998), *Renee J. v. Superior Ct. of Orange County Social Services*, 26 Cal.4th 735, 110 Cal.Rptr.2d 828, 28 P.3d 876 (2001), *In re Heller*, 669 A.2d 25 (Del.1995).

er, determined that there may be instances where the facts, as determined by the Department, may warrant services to a particular parent. In those instances, our General Assembly has authorized the Department to provide services.[16]

■ Section 1103(d) does not violate the first prong of the separation of powers test because the nature of the power exercised is executive in nature.

Volume 71, Chapter 317 of Delaware Laws rewrote section 1103(a)(4) and added section (d).[17] In reviewing these legislative enactments, the Court takes notice that section 1103(a)(4) follows the federal act by adopting "aggravating circumstances."[18] Our General Assembly was aware of the legislative intent in adopting 42 U.S.C. § 671(a)(15).

The legislative history of the federal enactment contains the following statement:

> [T]here seems to be a growing belief that Federal statutes, the social work profession, and the courts sometimes err on the side of protecting the rights of parents. As a result, too many children are subjected to long spells of foster care or are returned to families that reabuse them.
>
> The bipartisan group that wrote this legislation recognized the importance and essential fairness of the reasonable efforts criterion. What is needed is not a wholesale reversal of reasonable efforts or of the view that government has a responsibility to help troubled families solve the problems that lead to child abuse or neglect.... Rather than abandoning the Federal policy of helping troubled families, what is needed is a measured response to allow States to adjust their statutes and practices so that in some circumstances States will be able to move more efficiently toward terminating parental rights and placing children for adoption.[19]

Section 1103(d) is a calculated and measured response in balancing the need to protect the safety of the child and offering of services to those parents who the child welfare professionals believe could truly benefit from services. Section 1103(d) is an example of a co-operative venture between the judiciary and executive branch of government. Only in those cases where this Court determines a parent has committed an act under section 1103(a)(4) does section 1103(d) deny reunification services to the offending parent unless, based on the professional opinion of the Department, services may lead to reunification. When the Department decides that offering services to a parent in the subject class would be beneficial to both parent and child, then judicial review takes place regarding the reasonableness of the services offered. Section 1103(d) does not violate the second prong of the separation of powers doctrine.

Lastly, the Court must determine the nature of the objective sought to be attained by the legislature. Clearly, section 1103(d) is part of a legislative effort to reform the child welfare system to better meet the needs of our dependent, neglected and abused children. Section 1103(d) expedites a child's right to permanency in most cases by not requiring that services

---

16. At least three other states have statutes with language similar to section 1103(d) which provide the children agencies in those states authority to offer services even when aggravating circumstances have been found by a court: Mo. St. 211.183; N.J.S.A.30:4C–11.3; O.R.S. § 419B.340.

17. 71 Del. Laws C. 317 (1997).

18. 42 U.S.C. § 671a(15)(D).

19. H.R.Rep. No. 105–77 (April 28, 1977), 143 Cong. Rec. 77, 105 at 8 (1997).

be offered to those parents who have been found to have violated section 1103(a)(4). A permanency hearing is normally held within 30 days of a finding of a violation of section 1103(a)(4). Section 1103(d) serves to benefit children in foster care by bringing permanency more quickly to them. This statute does not violate the separation of powers doctrine.

### Conclusion

Title 13, section 1103(d) of the Delaware Code is a valid exercise of legislative authority and does not violate the separation of powers doctrine. In those cases where this Court determines a ground exists for the termination of a parent's rights under section 1103(a)(4), and the Department does not offer reunification services, a permanency hearing shall be held within 30 days.

**IT IS SO ORDERED.**