**In the Matter of a MEMBER OF the BAR of the Supreme Court of Delaware.**

Supreme Court of Delaware.

July 9, 1969.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, for the Censor Committee.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for respondent.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

This Court promulgated, effective January 1, 1968, Rule 32A, establishing a Clients' Security Trust Fund "to establish as far as practicable, the collective responsibility of the Profession in respect to losses caused to the public by defalcations of members of the Bar".

The trust fund thus established is built up by annual payments from members of the Bar upon a graduated scale, depending upon the number of years of practice. By Section (5) of the Rule, these payments are required "As a condition to continuing membership in the Bar of this Court". Section (5) (d) provides that any failure by a member of the Bar to comply with the Rule shall be referred by the trustees of the Trust Fund to the Censor Committee of this Court.

The respondent, presumably to test the constitutionality of Rule 32A, refused to make the payments to the Trustees required of him by Section (5), whereupon the Trustees referred his refusal to the

Censor Committee. The Committee conducted proceedings in accordance with Rule 32 of this Court and filed its report upholding the validity of Rule 32A, and recommended that appropriate disciplinary action be taken against the respondent.

Respondent contends that Rule 32A is unconstitutional on two basic grounds:

1. That the power of this Court over duly admitted members of the Bar is limited to the negative right to discipline for moral or professional misconduct;

2. That the payment required by Rule 32A is a tax which this Court is without power to impose.

In Delaware Optometric Corp. v. Sherwood, 36 Del.Ch. 223, 128 A.2d 812, we had occasion to consider the inherent powers of this Court to establish and control the Bar. We pointed out that lawyers as officers of the Court were an important adjunct to the administration of justice, and that the profession from its inception in England was affected with a public interest. It was this concept which the colonists brought with them from England to this State. The authority, as well as the duty, to establish the Bar and to maintain its standards exists inherently in this Court as the highest court of the State, independent of any statutory grant of authority, although there does exist in our Code such authority. See 10 Del.C. §§ 161, 1905, 1906. We regard these statutory enactments as nothing more than legislative recognition of the inherent powers of this Court.

The justification for the existence of this power inherently in the courts is the necessity for the proper administration of justice, which can be achieved only if the procedures and practices of the courts are fair and reasonable, and the officers of the court, the lawyers, are competent and ethical. Thus it is that by rule of court requirements are established for admission to the Bar, and standards of ethical conduct established, to which all lawyers must conform to continue in the practice of law.

The policing of these requirements is achieved by the inherent power of the court to discipline lawyers for violations.

We do not believe there is any dispute between counsel concerning the foregoing. There is a dispute, however, between them as to whether or not the purpose of the Clients' Security Trust Fund falls within the scope of the inherent power of the Court. The stated purpose of Rule 32A is "to establish as far as practicable the collective responsibility of the Profession in respect to losses caused to the public * *."

We think this purpose falls within the scope of our inherent power. The proper administration of justice will falter if the Bar as a whole loses the confidence of the public as to legal service to which it has a maintained monopoly. The reputation of the Bar as a whole suffers when one of its members embezzles, even though the wrongdoer is a conspicuous exception among honest lawyers who join in the condemnation of his misconduct. Too often, however, the public thinks only of the defrauded client who must absorb the loss caused him by one who had been held out as a member of a privileged and trustworthy profession to which the public must, of necessity, turn.

It must be borne in mind that lawyers, constituting the Board of Bar Examiners by appointment of this Court, control admissions to the Bar. In a sense, therefore, the profession holds out to the public all its members in good standing as being competent, honest and devoted to their clients' interests. This, it seems to us, is in the nature of a collective representation by the Bar to the public, and justifies a collective acceptance of responsibility when one of its members is false to his oath and the common precepts of honesty.

The whole matter is summed up in the following excerpt from the Report of the Special Committee on Clients' Security Funds, 84 Reports of A.B.A. 605:

"Chief Justice Vanderbilt and Reginald Heber Smith have placed its justifica-

tion on an unassailable basis. We are engaged in a profession that serves the public and enjoys a monopoly in that service. We rightfully control the machinery governing admission to our privileged ranks and the discipline and disbarment of those who transgress. We lawyers cannot truly deny the existence of that control on the ground that the judiciary, the law schools and the legislature also have a voice. The public looks to the profession to keep its own house in order and when a lawyer embezzles his client's funds, the whole bar is blackened in the public eye. The rest of us, as well as the embezzler, are considered at fault because we have failed to police our own ranks and to prevent the defalcation.

"Even if in fact the profession could properly feel without blame, the defrauded client is a casualty whose injury arises out of the practice of our profession. Most of us approve the principle underlying the workmen's compensation laws. Why should any lawyer recoil from the Clients' Security Fund on the ground that it requires contribution from those who are not responsible for the embezzlement?"

■ We are of the opinion, therefore, that Rule 32A, which seeks to insure the Bar's reputation, is action taken by the Court within the scope of its inherent power to sustain the standards of the Bar. Furthermore, we think the method set up by Rule 32A is reasonable in that as a practical matter it is calculated to achieve the valid stated purpose. Nor is the rate of assessment upon lawyers unreasonable. It is graduated in amount from $10 to $100 annually depending upon length of service at the Bar, and is thus presumably based upon ability to pay. Furthermore, there is a provision in the rule which permits adjustment in the rates to avoid hardship.

The respondent has argued that the rule lies beyond our power because we are limited to the powers of the common law court in the control of the Bar. He points out that at common law the courts had only the negative powers of suspension or dis-

barment over barristers, and that, while Delaware does not and never has distinguished between barristers and attorneys and solicitors, the respondent stands before us in his capacity as a barrister.

We think the argument unsound. Delaware has never had a separate class of lawyers performing the role of barrister only. Our lawyers combine both the function of the barrister and the function of an attorney and solicitor. With respect to the latter class, the English courts have special control. 3 Halsbury's Laws of England (3rd Ed.) 35. We think we have the same special control over our Bar. As a matter of fact, if the respondent were correct in this contention, it would be doubtful if this Court could exercise any control over admissions to the Bar since, in England, admission to the ranks of barristers was in the sole control of the Inns of Court. Yet, control over admission to the Delaware Bar by the Courts has existed since 1676.

■ Next, the respondent attacks Rule 32A on the ground that in minimal effect it establishes an integrated Bar which it is urged this Court is powerless to create by rule. The answer to this contention is simply that the creation of a Clients' Security Trust Fund does not establish an integrated Bar. No lawyer is required to join a Bar Association and, indeed, some of our Bar belong to no such association. The Fund is collected and administered by Trustees appointed by this Court and not by the State Bar Association.

This conclusion is pointed up by the remarks of Mr. Justice Douglas dissenting in Lathrop v. Donohue, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191, distinguishing assessments to a Clients' Security Trust Fund from dues payable to an integrated Bar which, in his opinion, violated the lawyer's right of freedom of association. Indeed, even if the creation of this Fund were considered to establish an integrated Bar, which it does not, it would still lie within the powers of this Court. See, e. g., Integration of Bar Case, 244 Wis. 8, 11 N. W.2d 604, 12 N.W.2d 699, 151 A.L.R. 586.

■ Finally, respondent argues that the assessment laid upon Delaware lawyers is unconstitutional because it is the levying of a tax which is a legislative and not a judicial function. The short answer to this contention is that the payment required is an assessment and not a tax. We have held that we have the power to order the creation of the Fund and, that being so, it necessarily follows that we have the power to direct the imposition of a reasonable assessment to accomplish the purpose.

There seems to be no reported decision upon the question except the dictum of Mr. Justice Douglas in the *Lathrop* case. However, as of June 15, 1967, there were Clients' Security Funds operating in 26 states. 92 Reports of A.B.A. 588. To date, none of these funds have been questioned, at least in any reported decision. While this fact is, of course, not conclusive, nevertheless, it must have some persuasive effect.

■ To sum up, we hold that the promulgation of Rule 32A is a valid exercise of our inherent power to maintain the standards required of the Bar, and to uphold its reputation by the imposition of collective responsibility for the conduct of its members. Accordingly, the refusal by a member of the Bar to pay the assessment required of him is professional delinquency on his part.

Presumably, the respondent refused to pay in order to make a test case on the rule. On that assumption, we accept the Censor Committee's recommendation of a discipline by ordering him to pay all arrearages in his assessments to the Trustees of the Clients' Security Trust Fund within 15 days of the entry of an order upon the Committee's Final Report. Upon compliance by the respondent, the matter will be at an end. If noncompliance continues, it should be reported to this Court for further consideration and action.