Robert HAGOPIAN

v.

The JUSTICES OF the SUPREME
JUDICIAL COURT.

Civ. A. No. 74–2813–F.

United States District Court,
D. Massachusetts.

March 23, 1977.

Robert Hagopian, Cambridge, Mass., for plaintiff.

John F. Hurley, Asst. Atty. Gen., Boston, Mass., for defendants.

Before ALDRICH, Senior Circuit Judge, and MURRAY and FREEDMAN, District Judges.

ORDER

FREEDMAN, District Judge.

Plaintiff Hagopian, a member of the Massachusetts bar, brings this action pursuant to 42 U.S.C. § 1983. He challenges the

constitutionality of certain rules promulgated by the Supreme Judicial Court of Massachusetts establishing a Clients Security Fund and assessing annual fees, a portion of which is used to finance the fund.[1] The Clients Security Fund is designed to reimburse clients who have incurred losses as a result of defalcations of members of the bar, acting either as attorneys or as fiduciaries. The plaintiff contends the rules are legislative in nature and their adoption by a non-elected court violates the principle of one person, one vote set forth in *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed. 506 (1964). Plaintiff asserts that the power to issue the rules in question is derived from the police power and taxing power of the state and that the unbridled delegation of this power to an appointed non-accountable body is a violation of equal protection and due process.

Plaintiff's complaint was initially dismissed by a single judge district court. However, the Court of Appeals for the First Circuit, 546 F.2d 414, holding that the suit raised one or more substantial constitutional questions, vacated the order of the single judge and remanded the case to this three-judge court.

■■■ Upon remand, a case has been brought to the attention of the court which had not been presented to the Court of Appeals. We believe this case, *In Re Member of the Bar*, 257 A.2d 382 (Del.1969), appeal dismissed *sub nom., In Re Reed*, 396 U.S. 274, 90 S.Ct. 562, 24 L.Ed.2d 464 (1970), is dispositive of the plaintiff's claims. In *Reed*, the Supreme Court of Delaware upheld the constitutionality of the Delaware Supreme Court rule which established a clients security fund. The Delaware court concluded that the power to establish such a fund was part of the inherent power of the courts to sustain the standards of the bar, that the rule was a reasonable means of insuring the bar's reputation, and that the fee imposed to finance the fund was an assessment and not a tax. The United States Supreme Court dismissed an appeal

for want of a substantial federal question. *In Re Reed*, 396 U.S. 274, 90 S.Ct. 562, 24 L.Ed.2d 464 (1970). Such a dismissal is a disposition on the merits. *Hicks v. Miranda*, 422 U.S. 332, 343–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). Upon consideration of the foregoing, the court dismisses the plaintiff's complaint.

## APPENDIX

### 4:03 PERIODIC ASSESSMENT OF ATTORNEYS.

(1) Every attorney required to register in accordance with Rule 4:02, other than those on inactive status pursuant to that rule and suspended attorneys, shall pay an annual fee as established by the court from time to time,* which shall be paid to the Board with the registration statement required under Rule 4:02. The fee so paid subject to any applicable orders of this court shall be used to defray the costs of attorney registration and disciplinary enforcement, to provide funds for the operation of the Clients' Security Board and Fund established under Rule 4:04, and for such other purposes as the Board, with the approval of the court, from time to time shall determine.

### 4:04 CLIENTS' SECURITY BOARD AND FUND.

Section 1. A Clients' Security Board (Board) shall be appointed by the full court. This Board shall consist of five members of the Massachusetts bar to serve as public trustees to receive, hold, manage, and distribute the funds allocated to the Board from the annual fees assessed under subsection (1) of Rule 4:03. Such funds shall be held by the Board in trust as a separate fund to be known as the Clients' Security Fund (Fund). The purpose of the Fund is to discharge, as far as practicable and in a reasonable manner, the collective professional responsibility of the members of the Massachusetts bar with respect to losses caused to the public by defalcations of members of the bar, acting either as attor-

---

1. These rules are set forth in full in an appendix to this order.

neys or as fiduciaries (except to the extent to which they are bonded, or to the extent such losses are otherwise covered). [EFFECTIVE Jan. 1, 1976]

### 4:05 CLAIMS BY CLIENTS FOR REIMBURSEMENT OR LOSSES.

Section 1. The Board may consider applications by clients for reimbursement of losses discovered after the effective date of these rules, and may honor, pay, or reject such claims in whole or in part to the extent that funds are available and in accordance with such rules, regulations, and principles as may be in force from time to time, especially the provisions of this Chapter Four. All reimbursements shall be a matter of grace, not right, and no client, beneficiary, employer, organization, or other person shall have any right or interest in the Fund.

Section 2. No application for reimbursement from the Fund shall be allowed unless the attorney of the client applicant (1) was, at the time the claim arose, a member of the Massachusetts bar with an office within the Commonwealth and engaged in active practice, and (2) shall have died, or have been disbarred or suspended from the practice of law, or have resigned from the Massachusetts bar.

Section 3. The Board, in determining in its discretion whether any application for reimbursement from the Fund shall be allowed, shall attempt in the public interest to establish fair, reasonable, and consistent principles for the allowance and rejection of claims in the circumstances existing from time to time, and shall consider the following matters and factors together with such other circumstances as the Board may deem appropriate and relevant:

(1) The amounts available and likely to become available to the Fund for payment of claims; the size and number of claims likely to be presented in the future; the total amount of losses caused by defalcations of any one attorney or associated groups of attorneys; and the unreimbursed amounts of claims theretofore recognized by the Board as meriting reimbursement but for which complete reimbursement has not been made.

(2) The amount of the claimant's loss as compared with the amount of the then known losses sustained by other applicants who may merit reimbursement from the Fund; the degree of hardship suffered by the claimant as compared with that suffered by other applicants; and any negligence or conduct of the claimant which may have contributed to the loss.

Section 4. In addition to other conditions and requirements, the Board may require any applicant, as a condition of any payment from the Fund, to execute such instruments, to take such action, and to enter into such agreements as the Board may direct, including assignments, subrogation agreements, trust agreements, and promises to cooperate with the Board in making and prosecuting claims or charges against any person. The Board may request individual lawyers and bar associations to assist it in the investigation of claims.

### 4:06 MISCELLANEOUS POWERS AND DUTIES OF CLIENTS' SECURITY BOARD.

Section 1. In addition to other powers the Board, in order to carry out its functions and duties,

(1) may adopt, with the approval of this court, rules and regulations not inconsistent with these rules;

(2) may enforce, in its discretion, claims for restitution arising by subrogation, assignment, or otherwise;

(3) may invest or direct the investment of the Fund, or any portion thereof, in such investments as the Board may deem appropriate, and may cause funds to be deposited in any bank, banking institution, savings bank, or federally insured savings and loan association in this Commonwealth provided, however, that the Board shall have no obligation to cause the Fund or any portion thereof to be invested;

(4) may employ and compensate consultants, agents, legal counsel, and employees,

and, subject to the prior written approval of this court or a justice thereof, may make contracts for the performance of administrative and similar services, for obtaining surety bond or insurance coverage useful or appropriate in providing protection to clients of attorneys, and for other goods and services appropriate in the performance of the Board's duties;

(5) may sue in the name of the Board without joining any or all of its individual members; and

(6) may perform other acts necessary or proper for the efficient administration of the Fund.

Section 2. Money shall be disbursed from the Fund only upon written order issued by action of the Board pursuant to this Chapter Four. At least once each year, and at such additional times as the court may order, the Board shall file with this court a written report of its administration of the Fund.

Section 3. The Board annually, and at such other times as this court may direct, shall obtain an independent audit by a certified public accountant of funds received and paid out by it in connection with the administration of the Fund. The cost of any such audit shall be paid from the Fund.