722 A.2d 1 (1998)
In the Matter of a Member of the Bar of the Supreme Court of Delaware: John A. FARAONE, Respondent.
No. 42, 1998.
Supreme Court of Delaware.
Submitted: June 16, 1998.
Decided: July 31, 1998.
Charles Slanina, of Tybout, Redfearn & Pell, Wilmington, for Respondent.
Matthew F. Boyer, Deputy Counsel, Wilmington, for Office of Disciplinary Counsel.
Before WALSH, HOLLAND and BERGER, Justices.
*2 PER CURIAM:
This matter is before the Court for final disciplinary action upon review of the September 25, 1997 Report of the Board on Professional Responsibility. The respondent, John A. Faraone, has been a member of the Bar of this Court since 1963. The Board found that Faraone violated various Rules of Professional Conduct by, among other things, misrepresenting material information and failing to correct certain misunderstandings. Because the Board found multiple violations in two separate transactions, the Board recommended that Faraone be suspended for 6 months, followed by 18 months probation. We agree with the Board's findings and recommended sanctions.

I.
This consolidated disciplinary proceeding arose out of two very similar real estate transactions that Faraone handled for his client, Turhan Boardley, a real estate investor. The first transaction involved David and Laura Bubacz, who had been trying, without success, to sell their home. In October 1995, the Bubaczes entered into an agreement of sale with Boardley whereby, in exchange for the property, Boardley agreed to pay $1100 in cash and to assume the Bubaczes' mortgage, which secured a debt of approximately $62,000. The Bubaczes had been advised by Gerald Dixon, an attorney who represented them when they purchased the property, that they should obtain a written release of liability from the mortgagor. Based on that advice, the Bubaczes added a term to the agreement requiring that a release of liability be signed at settlement. Boardley wanted to be sure that a release could be secured by then, so he added a provision giving him a 24-hour contingency for attorney approval.
The Bubaczes did not hear from Boardley on the day after the agreement was signed, so David Bubacz called Faraone to find out about the release. According to Bubacz, Faraone said that he would provide the Bubaczes with a "hold harmless agreement," which would provide them the same protection as a release of liability from the bank. Faraone explained that if Boardley did not make a mortgage payment, the bank would either foreclose on the property or pursue Boardley for payment, but it would not seek payment from the Bubaczes. With this assurance, the Bubaczes went to settlement on November 10, 1995.
At settlement, Faraone presented the Bubaczes a deed transferring the property to Nancy R. Washington as "Trustee." Faraone did not provide a hold harmless agreement and he asked for the Bubaczes' mortgage payment booklet for Washington to use to make the payments. The Bubaczes had never met or heard of Washington prior to settlement. In fact, Washington is Boardley's mother and, although she later signed an indemnification agreement with respect to the outstanding mortgage, Washington's promise to indemnify the Bubaczes was worthless since she was judgment proof. It also appears that Washington was designated a trustee to avoid paying transfer taxes, despite the fact that the relevant statute provides no exemption for a transaction such as this.
Neither Boardley nor Washington made any mortgage payments and, in January 1996, the bank notified the Bubaczes that they were in default and that the bank was considering foreclosure. When the Bubaczes contacted Faraone, he advised them to contact *3 their own counsel. The Bubaczes then went to Dixon, who sent a long letter to Faraone questioning the bona fides of the transaction and demanding, among other things, the return of the executed deed, which had not been recorded. Faraone never responded to that letter and, in May 1996, the Bubaczes deeded the property to the Federal Department of Housing and Urban Development in lieu of foreclosure.
One month after the Bubacz transaction was resolved, Faraone again represented Boardley in a transfer of property that left the original owners liable on the mortgage. Priscilla and Pierre Legerme knew Boardley and, on June 11, 1996, agreed to sell their home to him for $2200 and the assumption of the Legermes' mortgage. Boardley told the Legermes that the mortgage would remain in their name in order to avoid paying transfer taxes, but that he would assume the mortgage payments.
At settlement the Legermes, like the Bubaczes, relied on Faraone. They specifically asked Faraone how they would be protected if Boardley failed to make mortgage payments and Faraone responded by offering them the same type of worthless indemnification agreement given to the Bubaczes. Faraone never disclosed the Legermes' continuing liability and he never advised them to seek legal counsel. Unfortunately, history repeated itself. The Legermes deeded their property over to Boardley's mother, as Trustee; Boardley never made any mortgage payments; and the lender foreclosed. The property was sold at a Sheriff's sale in September 1997 and the record indicates that the Legermes remain potentially liable for a deficiency of approximately $20,000.
Based upon these facts, the Board found that Faraone violated the following Rules of Professional Conduct:
(1) DLRPC 1.2(d) (assisting a client in criminal or fraudulent conduct) based upon Faraone's assistance to Boardley in a scheme to defraud the State and County of real estate taxes;
(2) DLRPC 4.1(a) (knowingly making "a false statement of material fact or law to a third person") based upon Faraone's false representations to the Bubaczes that they would be relieved of liability on their mortgage and Faraone's representations to the Legermes that, by transferring the property to Boardley's mother, as "Trustee," the transaction was exempt from the payment of transfer taxes;
(3) DLRPC 4.1(b) (failing to disclose material information to a third party when disclosure is necessary to avoid a fraud committed by the client) based on Faraone's failure to tell the Bubaczes that the transaction, as structured, would not extinguish their mortgage liability;
(4) DLRPC 4.3 (failing to correct the misunderstanding when a lawyer knows that an unrepresented party misunderstands his or her role in the transaction) based on Faraone's failure to advise the Bubaczes or the Legermes to seek legal counsel when they raised questions about their potential liability with respect to the property transfers;
(5) DLRPC 8.4(c) (engaging in activities "involving dishonesty, fraud, deceit, or misrepresentation") based on Faraone's continuing course of misrepresenting facts to the Bubaczes with respect to the nature of the transaction.

II.
This Court reviews the Board's findings of fact to determine whether they are supported by substantial evidence.[1] "Where ... the determination of facts turns on a question of credibility and the acceptance or rejection of `live' testimony before the Board, this Court, in the exercise of judicial restraint, must affirm."[2] The Board's conclusions of law are reviewed de novo.[3]
*4 Faraone argues that the Board failed to give sufficient weight to all of the circumstances surrounding the two transactions, and he complains that the Board resolved all credibility issues against him. For example, he points out that the Bubaczes' deed was never recorded and they recovered possession of the property five months after the sale. Faraone suggests that the Bubaczes suffered no harm and that, as a result, the Board should not have found any violations of the Rules of Professional Conduct. We find no merit to these or Faraone's other complaints about the Board's findings. After carefully reviewing the Report and the record, we are satisfied that the Board's findings are supported by substantial evidence and are the product of a logical and deductive process.

III.
The remaining issue is the determination of an appropriate sanction. This Court is guided by its prior precedents, although each case presents a unique set of facts.[4] In evaluating the facts, we consider the aggravating and mitigating factors identified in the ABA Standards for Imposing Lawyer Sanctions. Disciplinary proceedings are primarily intended to protect the client, but they serve other purposes as well. Appropriate disciplinary action can help foster public confidence in the Bar, preserve the integrity of the profession, and deter other lawyers from similar misconduct.[5]
In this case, Faraone knowingly assisted an unscrupulous client who was (i) taking advantage of innocent third parties; and (ii) attempting to defraud the State and County of real estate transfer taxes. Although Faraone does not appear to have personally benefitted by his conduct, the Board found that his motivation was dishonest, and we agree. Moreover, Faraone has been practicing law for many years. He knew that the Bubaczes were concerned about their ongoing liability and he affirmatively misled them into believing that they were protected. This misconduct was greatly compounded when Faraone helped his client deceive a second set of unsuspecting homeowners, the Legermes. By that time, the Bubaczes had been forced to deed their property to HUD in lieu of foreclosure. Thus, when Faraone gave the Legermes the same half-truths and false assurances that he had given the Bubaczes, Faraone knew what the consequences of his conduct would be.
The Board concluded:
In this case the Board was left with an abiding sense that Respondent had knowingly and intentionally undertaken a course of conduct that put innocent third parties (the Bubaczes and Legermes) at unfair risk, solely to benefit an unscrupulous client. In addition, Respondent intentionally participated in a scheme to misrepresent facts to both State and County taxing authorities that could only result in a loss of public revenues, again, to benefit an unscrupulous client. It is of no moment to us that the actual tax revenues at risk were not great. What is great, in our eyes, is the betrayal of trust by an attorney who would undercut the proper functioning of the system in such a manner. In addition, the loss to the Bubaczes and Legermes was staggering, both financially and emotionally. They, and the public at large, deserve to feel confident that even if they choose to deal with a lawyer when they themselves are unrepresented they will be dealt with fairly and ethically. That did not happen here. In light of the foregoing, we recommend that the Court impose a six month suspension from the practice of law followed by a year and one-half probation to include the following terms during the period of probation:
1. Practice Monitor  A Practice Monitor shall be appointed who would meet with Respondent once a month initially and quarterly after the first three months to review all Respondent's real estate transactions to be sure that all proper disclosures are being made. The monitor will also be charged with bringing to ODC's attention any concerns regarding deviation from the Rules. Donald C. Taylor, Esquire *5 has agreed to serve as Respondent's Practice Monitor and we recommend that the Court approve such appointment.
2. Limitation On Practice  During the 18 months probation, Respondent should be barred from representing parties in mortgage assumption or payment takeover transactions.
3. Additional Continuing Legal Education  During the period of probation, Respondent shall be required to take an additional nine hours of CLE in real estate and an additional nine hours in ethics beyond normal requirements.
4. Restitution  Respondent should be Ordered to make restitution of $2,883.26 to the Bubaczes as calculated by ODC and $1,900.00 to the taxing authorities. Respondent should also be required to make restitution to the Legermes at any later date should they, in the determination of the Board, suffer quantifiable injury resulting from foreclosure of their former home.
After considering the aggravating and mitigating factors, we conclude that the Board's analysis and recommended sanctions should be adopted, as stated above. Accordingly, it is ADJUDGED and ORDERED that Faraone be disciplined as follows:
(1) John A. Faraone shall be prohibited and suspended from engaging in the practice of law for a period of 6 months beginning August 15, 1998.
(2) During the suspension, Faraone shall conduct no act directly or indirectly constituting the practice of law (including the sharing or receipt of any legal fees).
(3) Faraone shall comply with the provisions of Rules 22 and 23 of the Rules of the Board on Professional Responsibility.
(4) Faraone shall make arrangements with another member or members of the Delaware Bar to protect the interests of any of his clients during the period of suspension, and shall submit to this Court on or before September 1, 1998 a certificate of compliance with this paragraph, co-signed by the attorney or attorneys who have undertaken such assignment.
(5) Following the suspension, Faraone shall comply with the conditions of probation recommended by the Board.
(6) This Opinion shall be disseminated by Disciplinary Counsel in accordance with Rule 14 of the Rules of the Board on Professional Responsibility.
NOTES
[1] Matter of Tos, Del.Supr., 610 A.2d 1370, 1372 (1992).
[2] In Re Green, Del.Supr., 464 A.2d 881, 887 (1983).
[3] In Re McCann, Del.Supr., 669 A.2d 49, 54 (1995).
[4] Matter of Agostini, Del.Supr., 632 A.2d 80, 81 (1993).
[5] Matter of Tos, Del.Supr., 610 A.2d 1370, 1373 (1992).