In the Matter of A Member of the Bar of the Supreme Court of the State of Delaware: K. Kay SHEARIN.

No. 391, 1998.

Supreme Court of Delaware.

Submitted: Sept. 24, 1998.
Decided: Dec. 10, 1998.

K. Kay Shearin, pro se.

David Curtis Glebe, Office of Disciplinary Counsel, Wilmington, Delaware.

Before VEASEY, C.J., HOLLAND, and BERGER, JJ.

PER CURIAM:

This matter is before the Court for final disciplinary action upon review of the September 1998 Final Report and Recommendation ("Final Report") of the Board on Professional Responsibility ("Board"). The Final Report was issued following remand Orders from this Court dated February 23, 1998 and March 11, 1998. The Respondent, K. Kay Shearin ("Shearin"), has been a member of the Bar of this Court since 1986.

The Office of Disciplinary Council ("ODC") filed three separate petitions against Shearin with the Board: No. 39, 1992 containing five counts; No. 53, 1994 containing fourteen counts; and, No. 35, 1995 containing fifteen counts. The conduct at issue grew out of a dispute initiated by Mother African Union First Colored Methodist Protestant Church ("Church") against the Conference of African Union First Colored Methodist Protestant Church ("Conference") and Bishop Delbert L. Jackson ("Bishop"). The parties litigated in the following courts: the Court of Chancery of the State of Delaware, in and for New Castle County (Civil Action No. 12055);[1] the Court of Chancery of the State of Delaware, in and for Sussex County (Civil Action No. 1674); the Superior Court of the State of Delaware, in and for New Castle County (Civil Action No. 95C–07–230); the Supreme Court of the State of Delaware (No. 96, 1993, No. 318, 1995); and, the United States Bankruptcy Court for the District of Delaware (No. 95–308).[2]

Board cases No. 39, 1992 and No. 53, 1994 address Shearin's conduct in the Delaware state court proceedings. No. 35, 1995 addresses Shearin's conduct in the United States Bankruptcy Court for the District of Delaware.

1. For ease of reference, each matter will be referred to by its designated Civil Action Number hereinafter.

2. The parties also litigated in the United States Supreme Court by filing five petitions for certiorari, which were each denied. Although none of

## FACTS

### Court of Chancery
### New Castle County Action
### First Deed Voided

The Conference is a religious association with which various African Methodist Protestant churches have been affiliated. Shearin has acted as legal counsel for the Conference. Shearin has also actively assisted the Conference and the Bishop in litigation and other transactions.

The Church had been affiliated with the Conference until April 1991 when it took steps to secede from the Conference. At that time, the Church owned certain real properties in Wilmington, Delaware. Prior to the Church's secession from the Conference, the Bishop executed a deed ("first deed") purporting to transfer ownership in the properties from the Church to the Conference. That deed was prepared and recorded by Shearin.

On April 18, 1991, after the Church had seceded from the Conference, the Church brought Civil Action No. 12055. The Court of Chancery entered a temporary restraining order and then a preliminary injunction against the Conference and the Bishop, based upon its preliminary finding that the Church owned the properties. After a trial on the merits in that action, the Court of Chancery entered a final judgment in April 1992, declaring: that the power to control the disposition of the properties was vested solely with the Church; that such ownership had not been ceded in any manner to the Conference or Bishop; that the properties had never been validly conveyed to the Conference; and, that the deed was void. *See Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church,* Del.Ch., C.A. No. 12055 Jacobs, V.C., 1992 WL 111257 (May 20, 1992) (Mem. Op.).

the professional conduct in the case *sub judice* arose out of the United States Supreme Court filings, those proceedings delayed the proceedings before the Board because of the lack of finality.

The Court of Chancery entered an injunction that prohibited the Conference and Bishop from interfering with the Church's title, use, enjoyment or operation of the properties. *See Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church,* Del.Ch., C.A. No. 12055, Jacobs, V.C., 1992 WL 111257 (May 20, 1992) (Mem.Op.). The order was entered as a final judgment by the Court of Chancery in February 1993. That final judgment was affirmed by this Court in October 1993. The United States Supreme Court denied a petition for writ of certiorari to review the final order.

### Court of Chancery
### Sussex County Action
### Second Deed Void
### Shearin's Conduct Contemptuous

On December 13, 1993, the Bishop executed another deed ("second deed") which had been prepared and notarized by Shearin. This deed was prepared without notice to the Church or the Court of Chancery. The second deed purported to transfer ownership interests in the properties to certain third parties. Shearin recorded the second deed on December 27, 1993, without notice to the Church or the Court of Chancery.

In May 1994, at the direction of the Bishop and with Shearin as legal counsel, the Conference filed Civil Action No. 1674. The Conference sought a judicial determination of the ownership of the properties. This was the same issue that the Court of Chancery had already adjudicated in Civil Action No. 12055.

In response to this action, the Church requested the Court of Chancery to declare the second deed void, dismiss Civil Action No. 1674, and hold Shearin in contempt for having violated the Court of Chancery's previous final judgment. In July 1995, the Court of Chancery dismissed the action and held that Shearin's conduct was in contempt of its prior final judgment. *See Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church,* Del.Ch., C.A. No. 12055, Jacobs, V.C., 1995 WL 420003 (July 13, 1995) (ORDER) *aff'd Conference of African Union First Colored Methodist Protestant Church v. Mother African Union First Colored Methodist Protestant Church,* Del.Supr., No. 318, 1995, Veasey, C.J., 1996 WL 554236 (Sep. 23, 1996) (ORDER). The Court of Chancery also determined that the second deed was void *ab initio* insofar as it purported to transfer any interest in the properties.

### Court of Chancery
### New Castle County Action
### Corporate Charter Restoration
### Declared Void Ab Initio

Several weeks later the Bishop executed and Shearin notarized a document entitled "Certificate of Restoration, Renewal or Revival of the Certificate of Incorporation of the African Union Methodist Protestant Church and Connection" (the "Certificate"). The Certificate was filed with the Division of Corporations with the Secretary of State of the State of Delaware on June 5, 1995.

The Court of Chancery denied subsequent motions for relief from the July 1995 judgment and for a new trial. The Court of Chancery concluded that the motions were predicated upon the basis of "manufactured evidence," specifically, the Certificate. By order of the Court of Chancery dated September 22, 1995 ("September 1995 Order"), it ruled that the assistance by Shearin in the preparation and filing of the Certificate was a willful act of contempt in violation of the second final judgment that had been entered in July 1995. *See Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church,* Del. Ch., No. 12055, Jacobs, V.C. (Sep. 22, 1995) (ORDER) *aff'd The Conference of African Union First Colored Methodist Protestant Church v. Mother African Union First Colored Methodist Protestant Church,* Del. Supr., No. 408, 1995, Veasey, C.J., 1996 WL 554245 (Sep. 23, 1996) (ORDER).

The September 1995 disposition by the Court of Chancery characterized the assertions contained in the Certificate as "utterly" and "knowingly" false, and as having been made with the purpose of circumventing the

orders of the Court of Chancery. The September 1995 decision by the Court of Chancery declared the Certificate to be null and void *ab initio*. The Court of Chancery stated that the filing of the Certificate was "the latest manifestation of their [Shearin, the Bishop and the Conference] contumacious refusal to accept and abide by the determinations of the Orders of the Courts of this State in this action." *Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church,* Del. Ch., No. 12055, Jacobs, V.C. (Sep. 22, 1995) Order at 5, *aff'd The Conference of African Union First Colored Methodist Protestant Church v. Mother African Union First Colored Methodist Protestant Church,* Del. Supr., No. 408, 1995, Veasey, C.J., 1996 WL 554245 (Sep. 23, 1996) (ORDER). The Court of Chancery subsequently referred the September 1995 Order to the ODC for possible disciplinary action against Shearin.

### Superior Court Action
### New Castle County
### Filing Contemptuous

On July 31, 1995, Shearin, as counsel for the Conference, filed a complaint in the Superior Court against the Church based in part upon the Certificate. Once again the complaint raised issues that had been adjudicated by the Court of Chancery's final order in Civil Action No. 12055. On September 25, 1995, the Superior Court dismissed the complaint with prejudice, holding that the commencement of the action was in "direct violation" of the final judgment and other orders of the Court of Chancery in Civil Action No. 12055. The Superior Court also referred a copy of its findings to the ODC for possible disciplinary action.

### PROCEDURAL HISTORY

On September 25, 1996, a hearing was held before the Board and post-hearing memoranda were filed. Shearin's post-hearing memorandum was filed on June 3, 1997. The Board's Report on Findings ("Report") was issued on September 11, 1998.

On October 15, 1997, the Board submitted its Report and Recommendations ("Recommendations") concerning sanctions. At that time there was a request pending by Shearin for the appointment of counsel. The request was considered by this Court and an Order was issued on February 23, 1998, appointing Joseph A. Hurley ("Hurley"), Esquire, to serve as Shearin's counsel. *See In re Shearin,* Del.Supr., No. 437, 1997, Holland, J. (Feb 23, 1998) (ORDER). This Court then remanded the matter to the Board to reopen the proceedings while Shearin was represented by counsel.

On February 28, 1998, the ODC had requested a temporary stay of these proceedings in light of a new disciplinary matter (No. 10, 1998) that had commenced concerning Shearin. On March 10, 1998, Shearin, through counsel, filed a motion for Reargument in this Court, requesting that the remand to the Board focus on the issue of sanctions without disturbing the established record.

On March 11, 1998, this Court granted Shearin's Motion for Reargument and further ordered "that this matter is remanded to the Board on Professional Responsibility for further proceedings that are limited to the narrow issue of the sanctions imposed without, in any way, disturbing the record that exists and upon which the Board has reached its findings of fact and conclusions of law." *In re Shearin,* Del.Supr., No. 437, 1997, Holland, J. (Mar. 11, 1998) (ORDER).

On March 17, 1998, Shearin filed a Motion for Board Recusal requesting that the individual members of the Board "who approved the recommended sanctions filed on October 15, 1997 recuse themselves *en masse* in order to comport with basic precepts of due process of law." The ODC filed a response on April 2, 1998, opposing Shearin's Motion. The Board subsequently denied the Motion on April 7, 1998. Shearin was represented by counsel until June 22, 1998, at which time the Board granted leave to Hurley to withdraw from representing Shearin. The withdraw was based upon a June 8, 1998 Motion to Withdraw stipulated to by Hurley and Shearin. Following Hurley's withdrawal as counsel, the hearing was scheduled for July 20, 1998.

## THE HEARING ON REMAND

The parties and the Board convened for the hearing on July 20, 1998. Shearin was not represented by counsel. The ODC offered into evidence certain aggravating factors pursuant to the Rules of the Board on Professional Responsibility that occurred after October 15, 1997. The Board *sua sponte* decided that the proffered evidence was inadmissible under the explicit terms of this Court's March 11, 1998 Order. The ODC concluded its presentation.

Shearin did not present either evidence or argument, and remained silent throughout the proceeding. Shearin refused to respond to any questions from the Board about her participation in the hearing. Following deliberation, the Board reaffirmed its Recommendations dated October 15, 1997.

The Board found that Shearin violated certain of the Delaware Lawyer's Rules of Professional Conduct (the "DLRPC") and recommended that Shearin be suspended from the practice of law for a period of eighteen months, that a public reprimand issue and that upon Shearin's reinstatement to the practice of law in this state she undergo a period of supervision by an experienced member(s) of the Bar for a minimum period of eighteen months following reinstatement.

## BOARDS REPORT ON FINDINGS

### Board Case No. 39, 1992

The ODC charged Shearin with five separate violations of the DLRPC as follows: lack of candor to a tribunal; filing a brief containing disrespectful attacks on a trial judge; discourteous conduct to a tribunal; dishonest conduct; and, delays prejudicial to the administration of justice. The Board found that Shearin violated Counts One and Two. The remaining counts, the Board believed, were sufficiently addressed by the first two.

### Count One

The Board found, by clear and convincing evidence, that Shearin violated DLRPC 3.3(a)(1). Rule 3.3(a)(1) provides that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal. In Civil Action No. 12055, the Court of Chan-

cery found that Shearin inconsistently informed the court that she did represent a particular client, and at other times in the same litigation that she did not represent that client.

In April 1991, the Court of Chancery issued a temporary restraining order that directed the Bishop and his "agents, employees, officers, successors, assigns, and all others acting in concert with him" to permit access for the conduct of funerals and weddings as requested by plaintiffs. Pursuant to this order, when it first became necessary to schedule a funeral, plaintiffs' counsel approached Shearin and asked her to contact the Reverend Thomas E. Moon ("Reverend Moon") to make the arrangements. Plaintiffs' counsel contacted Shearin because Reverend Moon had been designated as Pastor of the Church by the Bishop. In other words, Reverend Moon was aligned with and otherwise thought to be a servant, employee or agent of the Bishop.

When plaintiffs' counsel approached Shearin, she told them that she did not want to be involved, and that they should contact Reverend Moon directly to arrange funerals. Shearin claimed that she did not represent Reverend Moon. Additionally, when plaintiffs' counsel sought to take the deposition of Reverend Moon, Shearin informed them that she was not Reverend Moon's attorney, that she would not be representing him, and that plaintiffs' counsel would have to subpoena Reverend Moon to obtain his testimony. Consequently, from April 1991 until the time trial took place in September 1991, plaintiffs' counsel contacted Reverend Moon directly to arrange for weddings and funerals.

Thomas Neuberger ("Neuberger"), one of plaintiffs' attorneys, communicated directly with Reverend Moon during the trial based on the understanding that Shearin did not represent him. Specifically, on September 17, 1991, Neuberger informed Reverend Moon that he would not be called to testify at trial and could leave the courthouse. On September 18, 1991, Shearin wrote to the Court of Chancery contending, for the first time, that she represented Reverend Moon and that Neuberger's direct communication

with Reverend Moon was ethically inappropriate. Shearin also wrote to the ODC regarding this alleged unethical conduct. An inquiry into Neuberger's conduct by the ODC led to no further action.

In a later incident, the Court of Chancery instructed Shearin to contact Reverend Moon pursuant to the order's directions to schedule a funeral. Shearin refused to obey the Court of Chancery's instruction. This incident prompted plaintiffs' counsel to move the Court of Chancery to hold Shearin in contempt of court. After holding a contempt hearing, the Court of Chancery advised counsel that, for reasons unrelated to the merits, it would decline to adjudicate Shearin in contempt.

The Court of Chancery concluded that it would be more appropriate to decide whether the conduct implicated and subsequently violated Chancery Court Rule 11. The Court of Chancery concluded that it did. The reasoning for this conclusion was due to ". . . Ms. Shearin's inconsistent litigating positions concerning her legal representation of Reverend Moon. Because those positions were both subjects of a 'pleading, motion [or] other paper of a party . . . signed by [an] attorney of record,' that conduct implicated, and could be addressed under the rubric of Chancery Court Rule 11."

Based upon this factual background, the Board concluded that Shearin violated Rule 3.3(a)(1) stating, "It is hard to conjure up a lawyer's misrepresentation to the Court more flagrant than the identity of the lawyer's client in the very proceeding being adjudicated."

### Count Two

The Board found, by clear and convincing evidence, that Shearin violated Rule 3.5(c). Pursuant to Rule 3.5(c), a lawyer shall not engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct which is degrading to a tribunal. In the appeal to this Court from Civil Action No. 12055, Shearin filed a reply brief "castigating the trial judge in personal terms and suggesting there were rumors he had been bribed by her opposing party." This Court ordered the brief stricken, stating: "[Shearin's] reply brief purports to contain legal argument constituting an *ad hominem* attack on the trial, is disrespectful and contains immaterial, impertinent and scandalous matter." *Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church*, Del.Supr., No. 96, 1993, Moore, J. (Sep. 13, 1993) (ORDER). Specifically, the brief filed by Shearin accused the trial judge of the following: "Unfortunately, refusing to consider the evidence was not the only time the vice chancellor wandered beyond the bounds of judicial propriety; [H]is hostility to Shearin at every hearing was so apparent that observers in the courtroom, including newspaper reporters, repeatedly commented on it and asked Shearin whether she believed the rumors that the vice chancellor had been bribed to favor Plaintiffs; Among practicing lawyers in Wilmington, [Vice Chancellor] is reputed to have a quick temper. . . ."

The Board found that these statements went "beyond 'undignified or discourteous' conduct, and [were] offensive and, in a non-litigation setting, probably libelous." Thus, the Board concluded that Shearin violated Rule 3.5(c).

### Board Case No. 53, 1994

The ODC charged Shearin with fourteen violations of the DLRPC. These charges included: incompetent representation; filing of papers contrary to the direction of the Court of Chancery; engaging in frivolous litigation; unnecessary delay in litigation; and, offering falsified evidence. The Board found that Shearin violated seven of the fourteen counts.

### Count Two

The Board found, by clear and convincing evidence, that Shearin violated Rule 1.2(d). Rule 1.2(d) provides in pertinent part:

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent.

The ODC contended that Shearin's preparation and filing of the first and second deeds and the Certificate were in derogation of the final judgments entered by the Court of Chancery. The Court of Chancery found

that Shearin's representations on behalf of her client in the Certificate were "utterly false" in light of its previous rulings. As a result of the evidence presented by the ODC and the Court of Chancery's ruling, the Board concluded that Shearin violated Rule 1.2(d).

### Count Four

The Board found, by clear and convincing evidence, that Shearin violated Rule 3.1, which provides in part that a lawyer shall not bring non-meritorious claims and contentions before the courts. In No. 12055, the Court of Chancery described the case as "bitterly contested, protracted litigation" with a "tor-, tuous and complex procedural history which demonstrates that the Conference, Bishop Jackson and Ms. Shearin have established a pattern of bringing litigation in other courts, and taking other actions intended to interfere with this Court's jurisdiction and to avoid compliance with this Court's orders." *Mother African Union First Colored Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church*, Del.Ch., No. 12055, Jacobs, V.C., 1995 WL 420003 (July 13, 1995) Order at 1.

The Board noted that Shearin did not present any evidence to the contrary. Based primarily on the Court of Chancery's findings, the Board found Shearin in violation of Rule 3.1.

### Count Five

The Board found, by clear and convincing evidence, that Shearin's conduct in the litigation constituted unnecessary delay in litigation in violation of Rule 3.2. Rule 3.2 demands that a lawyer make reasonable efforts to expedite litigation consistent with the interests of the client. The Board concluded that Shearin violated this Rule by the following evidence: the Memorandum Opinion of the Court of Chancery in No. 12055 and No. 1674; the Order of the Court of Chancery in No. 12055; and, the Order of the Superior Court in No. 95C–07–230.

### Counts Six, Seven, Eight, and Eleven

The ODC charged that Shearin's conduct in the preparation and filing of the "Certificate of Revival" constituted an offer of falsi- fied evidence. The Board found, by clear and convincing evidence, that Shearin violated Rules 3.3(a)(4), 3.4(b), and 4.1(a). Rule 3.3(a)(4) proscribes a lawyer from offering evidence that the lawyer knows to be false. Rule 3.4(b) provides that a lawyer shall not falsify evidence, counsel or assist a witness to testify falsely. Rule 4.1(a) states that in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person. The ODC further charged, and the Board upheld, that the filing of the false certificate created a false public business record which could mislead third persons. The Board found that these allegations were substantiated by the Court of Chancery's Order in No. 12055.

### Board Case No. 35, 1995

The Board charged that Shearin violated numerous of the Rules of Professional Conduct growing out of her participation in the bankruptcy case. *See Mother African Union Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church*, Del.Bankr., 184 B.R. 207 (1995). The Board relied upon the Bankruptcy Court's Memorandum Opinion in support of its findings that Shearin violated DLRPC 1.2(d) and 3.1.

### Count Sixteen

The ODC charged that Shearin assisted in filing a bankruptcy petition containing fraudulent claims concerning the assets and liabilities of her debtor client. The Board concluded that Shearin violated Rule 1.2(d) which provides that a lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent. The Board substantiated its finding of clear and convincing evidence that Shearin assisted a client in known fraudulent conduct by the Bankruptcy Court's opinion.

### Count Nineteen

The ODC charged that Shearin engaged in frivolous litigation by filing the bankruptcy petition in No. 95–308. The ODC contended that this conduct violated Rule 3.1 which prohibits a lawyer from bringing or defending a proceeding, or asserting or controverting an issue, when the lawyer knows or it is

obvious that there is no non-frivolous basis for so doing. The Bankruptcy Court dismissed the Chapter 7 petition filed by Shearin *sua sponte*, stating, "I find this case achieves no bankruptcy law objective and has only served to delay and frustrate legitimate state court proceedings." *Mother African Union Methodist Protestant Church v. The Conference of African Union First Colored Methodist Protestant Church*, Del.Bankr., 184 B.R. 207, 223 (1995). The Board concluded that the ODC had established, by clear and convincing evidence, that Shearin's conduct in the Bankruptcy case violated Rule 3.1.

## AGGRAVATING FACTORS

The Board found that the following circumstances constituted aggravating factors: that Shearin had been "exceedingly intemperate" in her behavior with the courts of the State of Delaware and with opposing litigants; that Shearin had numerous opportunities to alter and improve her litigation behavior yet refused to do so; and, that Shearin's conduct placed an undue and unnecessary burden on the court system and opposing litigants.

## MITIGATING FACTORS

The Board found the following mitigating circumstances on behalf of Shearin: that Shearin had no prior record of any violation of the Code of Professional Conduct; that Shearin complied in a responsible manner with the procedures of the Board during the course of the disciplinary proceedings; and, Shearin's conduct had not been the subject of any complaint that her own client had been harmed by any of her actions.

## BOARD'S RECOMMENDED DISCIPLINE

Based on the foregoing analysis and evidence, the Board concluded that Shearin committed multiple violations of the Code of Professional Responsibility. The Board considered the *ABA Standards on Imposing Lawyer Sanctions,* which include the following provisions:

6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, sub-mits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding.

6.22 Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or party, or interference or potential interference with a legal proceeding.

The Board did not conclude that Shearin made a "false statement" or submitted a "false document" that caused "serious" or "potentially serious" injury to a party or a "significant" or "potentially significant" adverse effect on the legal proceeding. Thus, the Board declined to recommend that the sanction of disbarment pursuant to ABA Standard 6.11 was appropriate. Similarly, the Board did not find that Shearin knowingly violated a court order with intent to obtain a benefit *and* caused "serious" or "potentially serious" injury to a party or caused "serious or potentially serious interference" with a legal proceeding. Accordingly, the Board did not conclude that Shearin's conduct was controlled by ABA Standard 6.21. Consequently, the Board did not recommend disbarment.

The Board did conclude, however, that Shearin's conduct implicated ABA Standards 6.12 and 6.22. Specifically, the conduct al-

leged in Board Case 39, 1992 implicated ABA Standard 6.12 in that Shearin misrepresented the identity of her client and filed a brief containing scandalous remarks concerning the trial judge. The conduct addressed by Board Case 53, 1994 implicated ABA Standard 6.22 in that it involved knowing violations of court orders and rules, and caused interference with legal proceedings. Finally, the conduct addressed in Board Case 35, 1995 implicated ABA Standard 6.22 in that the bankruptcy proceeding violated the bankruptcy rules and constituted "interference" with "legitimate state court proceedings."

Based on these conclusions, the Board recommended that Shearin be suspended from the practice of law for a period of eighteen months, that a public reprimand issue, and that upon Shearin's reinstatement to the practice of law in this state that she undergo a period of supervision by an experienced member(s) of the Bar for a minimum period of eighteen months following reinstatement.

### SHEARIN'S CONTENTIONS

Shearin contends that, in the absence of counsel, she will not submit any substantive or procedural support in opposition to the charges brought against her. Shearin asserts that any submission on her behalf without counsel would constitute a waiver of her right to counsel. Shearin further argues that if she had an attorney she would raise the following substantive and procedural issues: the Board violated this Court's March 11 Order by disturbing the record; that she was denied due process before the Board by not having court-appointed counsel; and, that

the ODC deceived the Board in characterizing the reasoning behind Hurley's withdrawal as Shearin's counsel.

### BOARD'S FACTUAL FINDINGS SUPPORTED BY RECORD

■■■■ This Court has made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Report. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings. *In re Higgins*, Del.Supr., 582 A.2d 929, 932 (1990). We review the Board's conclusions of law *de novo. Id.* We are satisfied that the record before us supports the findings of fact and the conclusions of law made by the Board in this case. *Id.*

### SHEARIN'S DISCIPLINE SUSPENSION APPROPRIATE SANCTION

■■■■ The inherent and exclusive authority for disciplining members of our Bar is vested in this Court. *See In re Green*, Del. Supr., 464 A.2d 881, 885 (1983). The Court has wide latitude in determining the form of discipline to be imposed. *See Matter of a Member of the Bar*, Del.Supr., 226 A.2d 705, 707 (1967). In imposing sanctions, the Court is guided by its prior precedents.[3] *See In re Christie*, Del.Supr., 574 A.2d 845, 853 (1990). Those prior precedents reflect, *inter alia,* that this Court has cited, with approval, the *ABA Standards for Imposing Lawyer Sanc-*

---

3. *In re Ryan*, Del.Supr., 498 A.2d 515 (1985) (suspended for two years for altering a letter from state securities agency that rejected registration of securities offered for sale by employer, with the intent to make employer believe that securities had been accepted for registration); *In re Tos, II*, Del.Supr., 576 A.2d 607 (1990) (suspended for one year for failing to provide competent representation, failing to comply with requests of the Supreme Court and Family Court Clerk, and failing to comply with Supreme Court directions); *In re McCann*, Del.Supr., 669 A.2d 49 (1995) (suspended for one year for missing filing deadlines, failing to respond to court orders, neglecting to inform client that appeal had been dismissed, identifying self as "nephew" in clients will, submitting falsified evidence to tribunal); *In re Mekler*, Del.Supr., 669 A.2d 655

(1995) (suspended for one year for failing to review clients file until five months after petition for review of child support order, submitting falsified documents to court, incorrectly informing clients that continuance was obtained, failing to appear at review, failing to communicate with court); *In re Lassen*, Del.Supr., 672 A.2d 988 (1996) (three year suspension for making personal restaurant charges to clients' accounts, disguising charges, making misrepresentations to bankruptcy court, and charging fictitious billable hours to clients); *In re Faraone*, Del.Supr., 1998 WL 463199 (1998) (six month suspension and eighteen month probation for misrepresenting material information and failing to correct certain misunderstandings concerning real estate transactions).

*tions. See, e.g., In re Barrett,* Del.Supr., 630 A.2d 652 (1993); *In re Brewster,* Del.Supr., 587 A.2d 1067, 1069–71 (1991); *In re Higgins,* 582 A.2d at 932; *In re Clyne,* Del.Supr., 581 A.2d 1118, 1125 (1990). The relevant *American Bar Association Standards for Imposing Lawyer Sanctions* are 6.12 and 6.22.

■■■■ When deciding upon the appropriate sanction the Court must consider that "[t]he primary purpose of disciplinary proceedings is 'to protect the public; to foster public confidence in the Bar; to preserve the integrity of the profession; and to deter other lawyers from similar misconduct.'" *In re Figliola,* Del.Supr., 652 A.2d 1071, 1076 (1995) *citing In re Agostini,* Del.Supr., 632 A.2d 80, 81 (1993). The lawyer discipline system was not designed to be either punitive or penal in nature. *See In re Rich,* Del.Supr., 559 A.2d 1251 (1989). The Court considers four factors when considering an appropriate sanction: (i) the nature of the duty violated; (ii) the lawyer's mental state; (iii) the actual/potential injury caused by the misconduct; and, (iv) the existence of aggravating and mitigating circumstances. *See In re Mekler,* Del.Supr., 669 A.2d 655, 668 (1995).

■■■■ The Delaware Lawyer's Rules of Professional Conduct are promulgated by this Court to set forth standards of ethical conduct to which all Delaware lawyers must conform to continue to practice law. *See Matter of a Member of the Bar,* Del.Supr., 257 A.2d 382 (1969). The Preamble to the DLRPC provides, in part:

> As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system.
>
> \*     \*     \*     \*     \*     \*
>
> A lawyer's conduct should conform to the requirements of the law, both in professional service to client's and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it

is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

\*     \*     \*     \*     \*     \*

As officers of the court, lawyers have an important role and responsibility in the administration of justice. *See Matter of a Member of the Bar,* Del.Supr., 257 A.2d 382, 383 (1969). The proper administration of justice in Delaware can be achieved only if the procedures of the courts are fair and the officers of the court are not only competent but also ethical. *Id.* The record reflects a pattern of unethical conduct by Shearin which demonstrates a complete disregard for her responsibilities as an officer of this Court imbued with public trust in the proper administration of justice. *See In re Kennedy,* Del.Supr., 503 A.2d 1198 (1985). This Court concludes that:

(1) Shearin shall be prohibited and suspended from engaging in the practice of law for a period of one year commencing January 1, 1999 and ending upon her reinstatement, for which application may be made after January 1, 2000.

(2) During the suspension, Shearin shall conduct no act directly or indirectly constituting the practice of law (including the sharing or receipt of any legal fees).

(3) Shearin shall comply with the provisions of Rule 24 of the Rules of the Board on Professional Responsibility.

(4) Shearin shall arrange with another member or members of the Delaware Bar to protect the interests of her clients during the period of suspension, and shall submit to this Court on or before March 1, 1999, a certificate of compliance with this paragraph, co-signed by the attorney or attorneys who have undertaken such assignment.

(5) This Opinion shall be disseminated by Disciplinary Counsel in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.